## MILLAR v. HILTON.

1. CONTRACTS—LEX FORI—CONFLICT OF LAWS—REMEDY.
   The validity and construction of a contract are controlled and to be determined by the laws of the *situs* or place where the contract was entered into, while the remedy for enforcing a foreign contract is regulated by the laws of the forum or country where such remedy is pursued.[1]

2. LIMITATION OF ACTIONS—FOREIGN CONTRACTS—BILLS AND NOTES —PRIVATE INTERNATIONAL LAW.
   The Michigan statute of limitations contains no special provisions recognizing the bar of limitations under a foreign statute, as is the case in some States, where,

[1] As to conflict of laws regarding questions arising under bills and notes, see notes in 61 L. R. A. 193, 19 L. R. A. (N. S.) 666.

however, it must appear that the period fixed by the foreign statute had fully run and the bar was complete before the defendant came within the jurisdiction of the State.

3. SAME.

Defendants owed plaintiff on a promissory note executed in Canada, where the parties resided, and defendants moved to Michigan, when the note had been due 3 years and a half. In neither place had the statute of limitations run so as to bar an action, at the time plaintiff brought suit in Michigan. *Held*, that the law would not be enforced as a matter of comity in a foreign country and that the two statutes could not be tacked together to bar the right of action.

4. SAME—BAR.

In an action begun in one State or jurisdiction upon a contract made in another, a plea of the statute of limitations existing in the place of the contract is not good as a bar to the action, but a plea of the statute existing in the country or State where the suit is in litigation is sufficient and as a universal rule, the statute operates merely upon the remedy; the law of the forum, not the law of the *situs* of the contract, controls.

5. BILLS AND NOTES—FOREIGN CONTRACT—PRIVATE INTERNATIONAL LAW—FORUM.

A promissory note negotiated, dated, signed, indorsed and delivered in Ontario, where it was also made payable and where all the parties resided, was a foreign contract, and though the right of action was transitory, the contractual rights of the parties were governed by the law of the place of contract.

6. SAME—HUSBAND AND WIFE—INDORSEMENT BY WIFE.

Under the law of the place of execution the payor's wife was liable on her indorsement with the same force and effect as though she was unmarried and proof of her signature, in the absence of evidence of duress or undue influence, made out a *prima facie* case. No presumption arose from the fact of coverture that shifted the burden of proof to plaintiff.[1]

---

[1] On the enforcement of a personal contract of a married woman capable of contracting according to the law of another state or country where the contract was made, see note in 26 L. R. A. (N. S.) 774.

Error to Wayne; Mandell, J. Submitted October 18, 1915. (Docket No. 13.) Decided December 22, 1915.

Assumpsit by Charles Millar against Francis A. Hilton and I. G. Hilton upon a promissory note. Judgment for plaintiff against Francis A. Hilton and for defendant I. G. Hilton on a verdict directed by the court. Plaintiff and defendant F. A. Hilton bring error. Affirmed as to defendant, appellant. Reversed as to defendant I. G. Hilton.

*Moore & Moore,* for plaintiff.
*Lodge & Brown,* for defendant.

STEERE, J. This appeal involves a judgment, in an action begun in the Wayne county circuit court, May 9, 1912, upon a promissory note dated at Toronto, Ontario, November 20, 1902, due in three months, made and signed by defendant Francis A. Hilton, payable to the order of I. G. Hilton, his wife, at Molson's Bank, Toronto. Plaintiff became owner of the note when, or shortly after, it was made, and discounted it at Molson's Bank. When it became due the bank protested it for nonpayment, and, having indorsed the same, plaintiff was subsequently obliged to pay the amount due upon it to the bank, again becoming owner of the paper. The note fell due on February 23, 1903. Defendants moved from Toronto to Detroit, Mich., on December 1, 1906, and have resided in that city ever since. Plaintiff is still a resident of Ontario. Under a plea of the general issue, defendants gave notice in defense that the note was barred by the Michigan statute of limitations, and that defendant I. G. Hilton was a married woman when she indorsed the same. Upon the trial, the genuineness of the note and plaintiff's ownership for value were not questioned. It was also conceded that when said note was given defendants were,

and yet remained, husband and wife, and that nothing had been paid upon the same by defendants since it fell due. The statutes of Ontario were introduced in evidence, from which it appeared that the statute of limitations in that jurisdiction is the same as that of Michigan, as applied to actions upon negotiable paper of the kind involved here, and under the Ontario law in force when defendant I. G. Hilton indorsed the note no disability existed as to her by reason of coverture. No testimony was introduced by the defense beyond proving the Canadian statute of limitations. After both parties rested, each asked the court for a directed verdict. The court directed a verdict in favor of plaintiff against defendant Francis A. Hilton for the amount of the note, but held that his wife, I. G. Hilton, was not liable, on the ground that she was under disability of coverture, and directed a verdict of no cause of action as to her. Defendant Francis A. Hilton and plaintiff each sued out a writ of error.

This peculiar situation brings in juxtaposition the two principles involved in the general rule that, in determining whether a domestic or foreign law is applicable in a case under consideration, the validity and construction of a contract are controlled and to be determined by the laws of the *situs*, or place where the contract was entered into, while the remedy for enforcing a foreign contract is regulated by the laws of the forum, or country where such remedy is pursued.

At the time defendants left Canada and moved to Detroit, this note had been past due some three years and nine months. Six years had not expired since they established their residence in Detroit before this action was brought. The statute of limitations had not run in either country. Defendants seek to tack the running of the statutes of limitations in Canada and Michigan which, combined, would bar action upon the note. This cannot be done. The Michigan statute of limita-

tions contains no special provisions recognizing the bar of limitations under the statute of a foreign jurisdiction, as is the case in some States, while even under such provisions to be effectual it must appear that the period fixed by the foreign statute had fully run and the bar there was complete before the defendant came within the jurisdiction of the State where the action was brought. 25 Cyc. p. 1241, and cases cited.

The Ontario statute of limitations forms no part of the contract here sued upon and out of which the right of action arises. The action is based on a common-law right entirely independent of the statute, which may or may not later act upon the remedy. The statute does not create the right itself, nor extinguish it, though it may through lapse of time bar, *ex post facto*, the remedy when pleaded. But laws relating to remedies on contracts are not a matter of comity. The rule is well settled by an abundant and long line of authority that remedies are governed and applied according to the law of the place where the action is instituted, rather than by the law of the place of the contract. The rule is clearly stated in Wood on Limitations (2d Ed.), vol. 1, § 8, and note, as follows:

"'Where an action is brought in one country or State upon a contract made in another, a plea of the statute of limitations existing in the place of contracts is not a good bar, but a plea of the statute existing in the country or State where the action is brought is.' This rule is in conformity with the universal rule that, as the statute operates merely upon the remedy, the law of the forum, and not the law of the *situs* of the contract, controls."

In the early and leading case of *Bulger* v. *Roche*, 28 Mass. (11 Pick.) 36 (22 Am. Dec. 359), where the debt was barred between the parties in a foreign jurisdiction by the law of that country before either left it, Chief Justice Shaw, in the concluding paragraphs of his illuminating discussion of the subject, says:

"The plaintiff, having a right to sue in our courts, must conform to our law, as to the time of bringing his action, and all other particulars affecting his remedy. That remedy is not barred or taken away by our statute of limitations, until six years have elapsed after both the plaintiff and the defendant have been within the jurisdiction of the commonwealth. How does the existence of a foreign law of the like kind, which would merely affect the remedy within its own jurisdiction, control or affect the statute of limitations which regulates the remedy here? The statute itself makes no such distinction, and none can be implied either from its letter or spirit."

This case, with others to the same effect, is cited and recognized as controlling in *Belden* v. *Blackman,* 118 Mich. 448 (76 N. W. 979), where it is said:

"Our statute is like that of Massachusetts and New York. The statutes of those States have been construed as applying to causes of action which accrued without the State between nonresidents (citing cases). We think the last-named cases should be followed here."

This rule is also recognized in *Blackburn* v. *Blackburn's Estate,* 124 Mich. 190 (82 N. W. 835, 83 Am. St. Rep. 325).

Defendants' contention that the ruling of the trial court is "anomalous" and introduces a "strange doctrine," because it is elementary that the cause of action accrued when the note fell due and a cause of action can accrue but once, while the statute of limitations having once started to run will continue, demands, to give it point, recognition of the Ontario statute of limitations and its application in combination with the Michigan statute to the case under consideration. Eliminating the foreign remedial statute, the strange doctrine vanishes. The cause of action has accrued but once in this State, and since then the statutory period of limitations has not intervened. In the absence of special statutory provisions, the law upon

the question is too well settled in this State, and else-where, to be questioned.

It is also well settled in this State, in harmony with the prevailing rule elsewhere, that foreign contracts, when the subject of litigation in this jurisdiction, are to be given effect, interpreted, and the contractual rights of the contending parties determined according to appropriate statutes and decisions of the territory where the contract was entered into, unless by some provision of the contract it is manifest the parties have otherwise intended and agreed. *Douglass* v. *Paine,* 141 Mich. 485 (104 N. W. 781). The promissory note upon which the action is based is clearly a foreign con-tract without qualification, intended to be performed where made. It was negotiated, dated, signed, in-dorsed, delivered, and made payable in Toronto, On-tario, where all parties in interest then resided. It was not paid there or elsewhere. Actions upon com-mercial paper are transitory, and the creditor may pursue and sue the debtor in any State where his per-son or property can be found; but the contractual rights of the parties are tested by the law of the place of contract, as before stated.

The trial court, referring to the disability of cover-ture in this State as applied to commercial paper, ex-pressed a doubt as to whether "the rule of law is any different in the Province of Ontario than in Michigan, and for the purpose of this case" directed a verdict in favor of Mrs. Hilton.

The applicable statute of Ontario in force at the time this note was given provided as follows:

"A married woman shall be capable of entering into and rendering herself liable in respect of and to the extent of her separate property on any contract, and of suing and being sued, in all respects as if she was a *feme sole,* and her husband need not be joined with her as a plaintiff or defendant, or be made a party to

189 Mich.—41.

any action or other legal proceeding brought by or taken against her. * * * Every contract entered into by a married woman on or after the 13th day of April, 1897, otherwise than as an agent (a) shall be deemed to be a contract entered into by her with respect to and to bind her separate property whether she is or. is not in fact possessed of or entitled to any separate property at the time when she enters into such contract, and it shall not be necessary in any proceeding to prove that she had any separate property at the time when such contract was entered into, or subsequently; (b) shall bind all separate property which she may at the time or thereafter possess or be entitled to; and (c) shall also be enforceable by process of law against all property which she may thereafter while discovert, possess or be entitled to." R. S. Ont. 1897, chap. 163.

The doubt expressed by the trial court as to the law of that Province differing from ours may have arisen from a once somewhat unsettled condition of their decisions touching presumptions and burden of proof where a married woman executed or indorsed paper with or for the benefit of her husband. This uncertainty became marked in the case of *Cox* v. *Adams,* 35 Can. S. C. R. 393, where, out of a diversity of opinions by the justices, it was inferable that a wife so signing was presumed to have acted under undue influence or duress of her husband, and the burden of proof rested upon those relying upon her signature to prove that she did not. In *Stuart* v. *Bank of Montreal,* 41 Can. S. C. R. 516, the *Cox* v. *Adams Case* was discussed at length by different members of the court whose views were not altogether in harmony, and a majority of the court inclined to the view that it was a controlling precedent; but, on appeal of the case from the Supreme Court of Canada to the Privy Council of England, it was squarely held without hesitation, accepting the law as laid down in *Nedby* v. *Nedby,* 5 De G. & Sm. 377, that in case of husband and wife the burden

of proving duress or undue influence lies upon those who allege it. This rule as to burden of proof and presumption was also declared in the English case of *Field* v. *Sowle*, 4 Russ. 112, where the wife had joined her husband in a promissory note to plaintiff for money advanced by him to her husband. Undue influence and coercion were urged as a defense, with no other proof than coverture. The court there said:

"The signature of the promissory note by the defendant Sarah Sowle is *prima facie* evidence to charge her; and it is upon her to repel the effect of her signature by evidence of undue influence, and not upon the plaintiff to prove a negative."

*Gold Medal Furniture Co.* v. *Stephenson*, 10 D. L. R. 1 (1913), fully recognizes this rule of *prima facie* liability with citation of authorities; the court quoting with approval from *Talbot* v. *Van Boris*, 1 K. B. 854 (1911), which is an action against a wife upon joint and several promissory notes of her husband and herself signed by her as surety. It was there held that the only substantial defense of the wife was duress, and she was not relieved by the relation of husband and wife from the burden of proving it; that:

"To support such a defense, where the alleged duress is that of a person other than the person contracted with, it must be shown that the duress by which the contract was procured was known to the plaintiff when he entered into the contract."

It is manifest that under the law of Ontario the wife is liable on her indorsement with the same force and effect as though she were unmarried, in the absence of proof of duress or undue influence.

Proof of this note and her signature made out a *prima facie* case against Mrs. Hilton. No presumptions existed by reason of coverture which placed upon plaintiff the burden of proving a negative, and no evi-

dence was offered to meet the case made.    Plaintiff was also entitled to a judgment against her.

For the reasons above given, the judgment rendered by the trial court herein is sustained and affirmed against said Francis A. Hilton, but reversed as to defendant I. G. Hilton, and a new trial granted plaintiff as to her.

BROOKE, C. J., and PERSON, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.