## MacGREGOR v. STATE MUT. LIFE ASSUR. CO.

### No. 8536.

Circuit Court of Appeals, Sixth Circuit.

April 14, 1941.

William B. Giles, of Detroit, Mich. (William B. Giles and Douglas G. Mode, both of Detroit, Mich., on the brief), for appellant.

Lawrence Brown, of Detroit, Mich. (Oxtoby, Robison & Hull, of Detroit, Mich., on the brief), for appellee.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant, Alexander MacGregor, Jr., executor of the estate of Alexander Mac-Gregor, deceased, appeals from a judgment, pursuant to a directed jury verdict dismissing his petition in an assumpsit action against appellee, the State Mutual Life Assurance Company of Worcester, Massachusetts, seeking to recover $20,000 plus interest, a premium paid to appellee by the decedent for an annuity.

Appellant's cause of action is based solely on the ground that the annuity contract in question was void ab initio, because solicited and written by an agent of appellee who was unlicensed in the State of Michigan.

Section 12341 of the Compiled Laws of Michigan, 1929, makes it unlawful for any person to act as an agent or solicitor, or otherwise for any insurance company in the State in procuring or receiving applications or in any manner, directly or indirectly, aiding in transacting any business for and in behalf of any insurance company until he shall have procured from the Commissioner of Insurance a license, and the Statute further provides that no insurance company shall in any manner receive the benefits of any business done or any services rendered by an unlicensed agent.

Section 12456 of the Compiled Laws of Michigan, 1929 places an annuity contract on the same footing as a life insurance policy and provides that no annuity contract shall be written except in accordance with and under the conditions and restrictions of the statutes now or hereafter regulating the business of life insurance, and also provides that if any insurance company writes a policy or accepts an application solicited by an unlicensed agent, any person who may have paid moneys therefor, shall be entitled to recover the same back from any person to whom it was paid, or in case any such person was an agent, then at his option from the principal of such agent by an action of assumpsit.

Section 12455 of the Compiled Laws of Michigan, 1929, makes a solicitor or agent of an insurance company, its agent in any controversy between assured or his beneficiary and the company.

Section 12370 of the Compiled Laws of Michigan, 1929, makes it unlawful for any insurance company legally authorized to transact business in the State to write, place or cause to be written or placed, except through a duly licensed agent in the State, any policy or contract for indemnity or insurance in the State, in or through any such legally authorized company outside the State of Michigan.

Prior to February 1, 1937, Alexander MacGregor, appellant's decedent, of Dearborn, Michigan, who was sixty-two years of age, wrote a letter to his brother, J. C. MacGregor of New Haven, Connecticut, who was a licensed soliciting agent for the appellee company in that State but not in Michigan inquiring categorically about annuity contracts. The letter specifically asked the return at Alexander MacGregor's then age on each $1,000 invested in an annuity; whether it could be paid by the month; the type of annuity advised by J. C. MacGregor if a future estate was not a consideration; what steps appellant's decedent could take in Dearborn to obtain the policy from his brother in New Haven and whether or not the writing of such a policy by his brother was worthwhile to him personally.

J. C. MacGregor replied to the letter February 1, 1937, in which letter he set out the different types of annuities written by appellee company and advised the life annuity if future estate was not a consideration. He also stated in the letter that a small commission would inure to himself if he sold the annuity and that his territory had no geographical bounds. This letter also gave the name and location of appellee's general agent in Detroit and stated that he was sure said agent or any one in his office would be glad to answer

any questions Alexander MacGregor desired to ask whether or not such agent wrote the business. With this letter J. C. MacGregor sent an application blank of appellee company for an annuity contract and a letter from the general agent of the company in New Haven, Connecticut, to the general agent in Detroit, Michigan.

Before the receipt of the application, appellant's decedent had sent to J. C. MacGregor a blank signed check and after receiving the application and talking with the local agent at Detroit, he wrote his brother to fill in the signed application for a $20,000 "Single Premium Life Annuity" payable quarterly and to fill in the blank check previously sent in the amount of $20,000, and, send both to the home office of appellee. After receipt of this letter and application from appellant's decedent, outlining the type of annuity desired, J. C. MacGregor on February 21, went to Dearborn, Michigan, for the purpose of persuading his brother to purchase a refund, rather than a non-refund, annuity on account of his ill health, but was unsuccessful, appellant's decedent insisting he preferred the non-refund annuity. While in Dearborn, appellant's decedent, in the presence of his brother, marked his approval of a change from quarterly to monthly annuity payments on the carbon copy of a letter written February 15th by J. C. MacGregor to appellant's decedent outlining the suggested method of paying the annuity. This was the only change made in the application.

J. C. MacGregor, while in Dearborn, Michigan, wrote Thos. G. Walsh, general agent for appellee at New Haven, Connecticut, to send to its home office at Worcester, Massachusetts, the application of appellant's decedent for the single premium life annuity and his check for $20,000 which was done. Also while in Dearborn, J. C. MacGregor had appellant's decedent sign another blank application and signature card, which he mailed to the appellee, neither of which it used.

The annuity contract in question was written at Worcester, Massachusetts, effective February 6, 1937, and mailed to J. C. MacGregor at New Haven, Connecticut, who forwarded it to appellant's decedent at Dearborn, Michigan. Appellant's decedent died July 5, 1937, after receiving four monthly payments under the policy.

The court held that the present annuity contract had been consummated outside the State of Michigan, and that no agent or solicitor of appellee had in any manner procured or received the application therefor or aided appellee in any way in procuring the contract in the State and that the Michigan Statutes relied on by appellant for recovery were inapplicable. The court instructed the jury peremptorily to find for appellee and entered a judgment dismissing appellant's petition; hence this appeal.

■ The insurance laws of Michigan on which appellant relies for recovery only apply when the contract was made within the State or where, in the procurement of the contract, the insurer had the assistance of an agent or solicitor in the State unlicensed by it.

■ It is true that the state may regulate the activities of foreign insurance corporations doing business therein, but it cannot regulate or interfere with what they do outside. The power of the state in this regard is not increased by the fact that the insurer has complied with the laws of the state in regard to doing business there. Clay Fire & Marine Insurance Company v. Huron Salt & Lumber Mfg. Company, 31 Mich. 346; Dudley A. Tyng & Company v. Converse, 180 Mich. 195, 146 N.W. 629.

■ It is obvious that the question here presented as to where the present contract is deemed to have been made and the activity of appellee's agent in the State of Michigan in connection therewith is fundamental and of first importance. The general rule is that the validity of a contract is to be determined by the law of the state in which made and if valid there, it is deemed valid everywhere.

■ If a contract is completed in another state, it makes no difference in principle whether a citizen of Michigan goes in person, or sends an agent or writes a letter across the boundary line between the two states. The contract is controlled by the law of the state where completed.

■ The issuance by a foreign insurance company authorized to do business in the State of Michigan, of an annuity contract on the life of a resident of that State, is not doing business within the prohibitions of the several Acts of the Legislature of the State relating to the writing of such contracts when the application for the contract and the check for the premium are voluntarily mailed by the annuitant to the

home office or to an agent of the company outside of the state at which place they are considered and accepted by the proper officers of the foreign company and the annuity contract corresponds in all respects to the application and is mailed from outside the state to the annuitant within the state. Minnesota Commercial Men's Association v. Benn, Executrix, 261 U.S. 140, 145, 43 S.Ct. 293, 67 L.Ed. 573.

Under such circumstances the validity and interpretation of the contract are governed by the law of the place where signed and approved. Millar v. Hilton, 189 Mich. 635, 155 N.W. 574.

The statutes here involved must be construed in the light of their purpose and when so construed, it is apparent that the Legislature of the State of Michigan was dealing with the relations which should exist between foreign insurance companies and the authority of the State, and as to them declared what should be done by such companies before they should be authorized to do business within the State or continue the business of insurance under such authorization. The Legislature sought to so hedge about the transaction of the business of insurance, that no foreign insurance company by any cunning device could overreach the statutes and transact business within the State without compliance with their terms. In order that the matter might be all inclusive the statutes also covered the activities of insurance agents within the State. In the case at bar, there is not the slightest evidence of an attempted evasion of the statute.

Appellee was authorized to do business in Michigan and had therein its duly licensed agents, with whom appellant's decedent consulted before mailing his application and before his brother visited him in Michigan, appellant's decedent had determined the form of annuity contract he wished to purchase, and had applied therefor. It was subsequently issued in exact conformation with his application with the exception that the annuity was to be paid in monthly, instead of quarterly, installments. The latter change was inconsequential.

As we view the evidence, the visit of appellee's agent to his brother before the contract was finally consummated was of no consequence. Land Company of Florida v. Fetty, 5 Cir., 15 F.2d 942; Allgeyer v. Louisiana, 165 U.S. 578, 588, 17 S.Ct. 427, 41 L.Ed. 832.

The validity and interpretation of the present contract are governed by the law of the place where made. The statutes of Michigan did not enter into its making nor did they govern its validity.

Judgment affirmed.