CAROLIN MANUFACTURING CORP. *v.* GEORGE S. MAY, INC.

1. TRIAL—EMPSON ACT—RESERVATION OF DECISION ON MOTION FOR DIRECTED VERDICT.

   The so-called Empson act empowering a trial judge to reserve decision on motion for a directed verdict until after jury shall have rendered its verdict does not apply to a case tried without a jury (3 Comp. Laws 1929, §§ 14531–14534, as amended by Act No. 44, Pub. Acts 1939).

2. SAME—CORPORATIONS—CONTRACTS—FAILURE OF CONSIDERATION.

   In assumpsit by domestic corporation against a foreign corporation not entitled to do business in this State at time personal services were rendered to plaintiff who first claimed the contract was void and therefore that it was entitled to a return of all money and then claimed that if contract were valid that there was a failure of consideration, it was not error to permit defendant to argue its case on the merits the same as if there were no claim that the contract was void.

3. PARTIES—CORPORATIONS—PROCESS.

   In domestic corporation's action of assumpsit against foreign corporation, record sustained trial judge's finding that defendant was not served and was not a proper party defendant.

4. CORPORATIONS—TRANSFER OF PERSONAL SERVICE BUSINESS TO PARTNERSHIP—EFFICIENCY EXPERTS.

   It was not illegal for a foreign corporation to transfer its business of furnishing the personal services of efficiency experts to manufacturers to a partnership, a new and distinct legal entity, and thereby avoid the necessity of making out numerous reports and taking out licenses to do business in various States where such transfer defrauds neither the States in which it operates nor the parties whom it serves.

5. SAME—PARENT AND SUBSIDIARY—SEPARATE ENTITY—OFFICER AND DIRECTOR PERSONNEL—FRAUD.

   The separate corporate entities of a parent and subsidiary corporation will not be disregarded and the parent corporation

will not be held liable for the acts and obligations of its subsidiary corporation, notwithstanding the facts that the latter was controlled by the parent through its stock ownership, and that the officers and directors of the parent corporation were likewise officers and directors of the subsidiary, in the absence of proof that the subsidiary was formed for the purpose of perpetrating a fraud and that domination by the parent corporation over its subsidiary was exercised in such manner as to defraud complainant.

6. SAME—CONTRACTS—STOCKHOLDERS.

One who contracts with his eyes open and charged with actual or constructive notice of the limitations on a corporation's liability may not go behind the corporate organization and reach the property of the individual stockholder.

7. SAME—EXECUTED CONTRACT—PERSONAL SERVICE.

In assumpsit by domestic corporation against foreign corporation to recover amount paid for personal services of efficiency experts under executed contract, plaintiff *held*, not to have sustained its burden of showing liability on the part of defendant.

8. SAME—FOREIGN CORPORATIONS—ASSUMPSIT—REPLEVIN—TROVER.

While a foreign corporation which was not qualified for doing business in this State may not recover in an action of assumpsit, it may recover its property in a replevin proceeding or bring trover proceedings.

9. APPEAL AND ERROR—FOREIGN CORPORATIONS—PROCESS.

Question as to whether or not foreign corporation which was not qualified for doing business in this State was properly before Supreme Court notwithstanding such defendant had not appealed from denial of its motion to quash service of process, where trial court held in its final opinion that the party served with process was not an agent, officer or employee of defendant so as to make it amenable to process within the State.

10. JUDGMENT—FOREIGN CORPORATIONS—NONJURY CASE—FINDINGS OF COURT.

A judgment for defendant, a foreign corporation, not qualified for doing business in this State, which followed an opinion by the trial judge who had tried the action of assumpsit without a jury, wherein he found defendant corporation did not enter into a contract with plaintiff, was not doing business in the State, and that party served was not defendant's agent,

officer or employee and that plaintiff had failed to establish its case of a failure of consideration under an executed contract for personal services of efficiency experts by a preponderance of evidence, was all embracing and did not necessitate a cross appeal by defendant in order to present for adjudication question as to whether there was a contract executed.

11. APPEAL AND ERROR—JUDGMENT—PREPONDERANCE OF EVIDENCE.
Judgment that defendant corporation had not made contract with plaintiff for personal services *held*, not contrary to the preponderance of the evidence.

12. CORPORATIONS—FOREIGN CORPORATIONS—STATUTES—DEFENSE OF SUITS.
The statute forbidding a foreign corporation from maintaining an action founded upon an act forbidden by statute in this State does not preclude a foreign corporation not qualified to do business in this State from defending a claim for liability in an action of assumpsit brought against it in this State (3 Comp. Laws 1929, § 14027).

13. WORDS AND PHRASES—VOID—VOIDABLE—INTENT.
Courts construe the term "void" as meaning "voidable" where it is apparent that the latter term expresses the result intended.

14. CORPORATIONS—FOREIGN CORPORATIONS—VOIDABLE CONTRACTS—ASSUMPSIT—RESCISSION.
In action of assumpsit for sums paid under a contract of a foreign corporation not qualified to do business in the State, such contract is construed as a voidable one, hence plaintiff may not recover until a proper rescission has taken place.

Appeal from Wayne; Richter (Theodore J.), J. Submitted June 7, 1945. (Docket No. 34, Calendar No. 43,063.) Decided October 8, 1945.

Assumpsit by Carolin Manufacturing Corporation, a Michigan corporation, against George S. May, Inc., an Illinois corporation, for money paid on services claimed to have been performed by defendant. Judgment for defendant. Plaintiff appeals. Affirmed.

*Pear, Campbell, Langs & Tyler,* for plaintiff.

*Welsh & Hill (Emerson J. Northway,* of counsel), for defendant.

BUTZEL, J. The question presented in this case is whether plaintiff Carolin Manufacturing Corporation, a Michigan corporation, did business solely with George S. May Company, an Illinois copartnership, or whether it also did business with George S. May, Inc., an Illinois corporation, it being claimed by plaintiff that the use of the copartnership form of doing business was a subterfuge used to avoid payment of franchise fees in the State of Michigan. It is conceded that George S. May, Inc., was not licensed to do business in the State at the time the contract in question was entered into or executed. The further question is presented whether, in the event that the business were done by George S. May, Inc., a corporation not licensed to do business in Michigan, plaintiff could recover moneys paid on an executed contract for which plaintiff had received full consideration. May a foreign corporation, not licensed to do business in this State, when sued in this State, defend on the ground that it had furnished full consideration for moneys it received, in a suit brought for a return of the moneys on the ground that the contract was illegal because the corporation had failed to obtain a certificate to do business in Michigan as required by law? Such other questions as have any merit will be discussed in the opinion.

George S. May, Inc., defendant herein, is an Illinois corporation that formerly was licensed to do business in the State of Michigan. On January 31, 1934, it filed notice of withdrawal and never took out a new license. Both the corporation and its suc-

cessor, the George S. May Company, a copartnership, were engaged in industrial engineering and assisting manufacturers in their production problems and eliminating waste and loss in their manufacturing methods. The George S. May Company, the copartnership, and its corporate predecessor maintained offices in Chicago and four other large cities in the United States. According to an affidavit filed on behalf of plaintiff by a former engineer and supervisor of defendant, now in plaintiff's employ, the George S. May Company had over 400 employees, the majority of whom were engineers and supervisors working in all of the States of the Union, and engaged in the installation and supervision of system work. The larger portion of the business was done in States other than Illinois. It made time studies to provide proper accounting methods. It attempted to show where proper savings might be made and losses avoided. It was a personal service business. George S. May Company maintained large offices in a building in Chicago owned by George S. May, Inc.

George S. May and family were the owners of over seven-eighths of the capital stock of George S. May, Inc. In 1934, the corporation entered into a written lease with George S. May, doing business as the George S. May Company. It leased all of the premises in Chicago with office equipment and fixtures, as well as those of the New York office, to George S. May at a rental of $2,200 per month. He agreed to purchase the corporation's supplies and assume its contracts. He also agreed to pay the corporation the net profits from the business except a small percentage of the total billing which he was to retain as his salary. Were this agreement still in force, we would be presented with a far more serious question. However, on January 2, 1942, and

*prior* to any dealings with the Carolin Manufacturing Corporation, plaintiff herein, George S. May, Inc., entered into a written lease to rent all of its real and personal property to George S. May Company, a copartnership, for a flat rental of $50,000 per year, George S. May, Inc., not to participate in or have anything to do with the profits or business. The corporation thus solely remained the owner of certain real estate and personal property which it leased to George S. May Company, a copartnership, for a sum certain.

Carolin Manufacturing Corporation was principally engaged in manufacturing nonferrous quality castings in Detroit, Michigan. It was having difficulties in its screw machine department, a comparatively new branch of its business, when in October, 1942, a representative of George S. May Company approached it without any previous request. Mr. Carolin, the president of the plaintiff corporation, was shown clippings that indicated large savings the company had made for others. He was impressed with the representations that the George S. May Company could make corrections in its business and install a system to improve manufacturing methods and bring about more efficiency and save costs, all to be done within a short period of time. Plaintiff entered into an agreement which provided that the George S. May Company should make a survey at plaintiff's expense and then furnish plaintiff with a production control plan for its shop. This was to consist of eight items and included careful engineering analysis of methods, motions, speeds, tooling, et cetera, setting up hourly performance standards, incentive plans to insure that standards would be met, orderly inspection of routine and bonus for quality control, proper production plan schedules, orderly functioning of these proce-

dures, and clear-cut shop organization including the proper training of such organization and bonus system, et cetera. The representative stated that he did not think the cost would exceed a maximum of 300 hours, to be paid for at $10 per hour plus traveling expenses for different men. Plaintiff admits receiving from the representative of George S. May Company a printed form entitled "Method of payment," providing for a charge of $10 per hour for engineers and for a traveling supervisor for as many hours weekly as would be mutually agreed upon at the rate of $10 per hour plus $25 for each visit to cover traveling expenses and $5 a day for living expenses. It further provided that plaintiff could cancel the services of George S. May Company at any time by notifying the traveling supervisor; that an invoice would be presented each week covering complete charges for that week, and plaintiff thereupon should give a check for the amount due plaintiff. Plaintiff was also to receive a standard installation procedure sheet, periodical reports of the progress of George S. May Company showing its activities as to what had been accomplished and what it proposed to accomplish in the immediate future. Another important provision stated that the May Company would not guarantee any results of this work because it dealt with human beings and could not anticipate the degree of resistance or cooperation it would receive. Plaintiff thus had a right to terminate at any time it was dissatisfied and avoid liability for further services. The May Company began its work under the agreement on October 26, 1942. Plaintiff terminated the services February 26, 1943.

Several months later plaintiff began suit against George S. May, Inc., an Illinois corporation, claiming that in accordance with the contract, it paid

George S. May, Inc., $9,385.50; that George S. May, Inc., was a foreign corporation and not duly authorized to do business in the State of Michigan in accordance with Act No. 327, § 93, Pub. Acts 1931; that by virtue of section 95 of the same act the contract was against public policy and void; and that it consequently became defendant's duty to comply with plaintiff's demand for the return of $9,385.50. Act No. 327, § 93, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-93, Stat. Ann. § 21.94), provides that it shall be unlawful for any foreign corporation to carry on its business in this State until it shall have procured from the secretary of State a certificate of authority for that purpose. Section 95 of the same act (Comp. Laws Supp. 1940, § 10135-95, Stat. Ann. § 21.96) provides that no such corporation shall be capable of making a valid contract in this State until it has complied with the requirements of the law relative to the obtaining of a certificate. In the second count of the declaration plaintiff alleged that it had entered into a contract with defendant corporation, sometimes operating under the name and style of George S. May Company, which had agreed to establish production control in not over 300 hours of time for which plaintiff was to pay at the rates hereinbefore recited; that on January 22, 1943, plaintiff terminated the contract because of defendant's failure to install a production plan; that plaintiff was, therefore, entitled to the return of $9,385.50 paid. Plaintiff's declaration did not mention its acquiescence or failure to object when the time devoted by the George S. May Company far exceeded 300 hours, nor did it mention that results were not guaranteed, nor that plaintiff could have terminated the services at any time.

Defendant made a motion to dismiss on the ground that the George S. May, Inc., never had any dealings

with plaintiff, that it was an improper party defendant; also that the court never acquired any jurisdiction over defendant, because the party served with process was not an officer or agent of the defendant corporation.    After numerous affidavits were filed by defendant, the motion to dismiss was denied without prejudice and without costs.    This court denied leave to appeal from the denial of the motion in the lower court but without prejudice to the right to raise all questions on the trial.    It also set aside a default entered against defendant. Thereafter defendant in its answer in the trial court insisted that it had never had any business relations with plaintiff and further denied all of the allegations in plaintiff's declaration.    The case was tried without a jury.    At the close of plaintiff's proofs, defendant again moved to dismiss and for a directed verdict on the ground that no showing was made that plaintiff ever did business with defendant corporation or that the latter was doing business in the State when the contract was made or thereafter; that there was no showing that process was duly served on an authorized representative of defendant corporation; and also on the ground that plaintiff was not entitled to recover under the proofs even if defendant corporation were doing business in the State of Michigan and the contract had been made with it.    The court reserved decision under the "Empson act" until the case was completed.    Plaintiff properly contends that the Empson act * does not apply to a case without a jury.    However, there is no question but that the court withheld its decision until the close of all of the proofs.    Testimony was introduced by defendant to show that plaintiff

---

* 3 Comp. Laws 1929, §§ 14531–14534, as amended by Act No. 44, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14531, Stat. Ann. and Stat. Ann. 1944 Cum. Supp. §§ 27.1461–27.1464).—REPORTER.

was not entitled to recover. At the close of the case, plaintiff sought to compel defendant to elect to stand either on its answer denying it had done any business with plaintiff or on defendant's alternative answer to the merits of the case. Plaintiff asked the court that if it should find plaintiff had done business with a foreign corporation not licensed to do business in Michigan, as claimed by plaintiff in the first count of its declaration, then the court should strike all of defendant's testimony tending to show that there was no failure of actual consideration. Plaintiff first elected to rely upon its argument that the contract was null and void, that the defendant had a duty to return all the amounts paid, but then it insisted also upon showing. that there was a failure of consideration even if the court did not uphold its first contention. After considerable argument in which plaintiff still persisted in also presenting its claim that there was a failure of consideration, if the contract were not absolutely void, the court stated that if plaintiff was going to argue the merits of its claim, he would permit defendant to argue whether or not there was such failure of consideration, if the contract were not void. The case was thus presented in both of its phases. There was no error in the court holding that, inasmuch as the attorney for plaintiff presented the case upon failure of consideration, assuming the contract were not void, so as to entitle plaintiff to return all its money, defendant would be permitted then to argue its defense on the merits of the case the same as if there were no claim that the contract was void.

The court rendered an opinion stating that from the testimony he found that defendant corporation did not enter into any contractual relation with plaintiff; that at the time of the contract defendant

was not doing business in Michigan; that the party served with process was not an agent, officer or employee of defendant so as to make defendant amenable to process within the State of Michigan. He further held that even had plaintiff established that defendant was doing business illegally within the State and had been properly served with process and was the real contracting party with plaintiff, the latter nevertheless had failed to establish its case by a preponderance of evidence. He held that defendant entered into a contract with the George S. May Company, a copartnership, and that no representations were made by the George S. May Company that it was a corporation; that no attempt was made by plaintiff to learn with whom it was doing business when it entered into a contract with George S. May Company, and that the fact that there was a George S. May, Inc., an Illinois corporation, was not ascertained by plaintiff until just before the suit was begun; that plaintiff entered into a contract with the copartnership which had merely rented assets from the defendant corporation; that there was no showing that the copartnership was in any way controlled or dominated by the corporation, nor that the profits of the business inured to the benefit of the corporation.

The fact that some of the members of the copartnership were also stockholders in the corporation would not of itself show domination or control of the one by the other. The testimony shows that the corporation was out of active business and simply leased its property. There is no testimony whatsoever that all of the assets used by the copartnership were leased from the corporation. Defendant corporation ceased to do business in Michigan in 1934 when it finally withdrew from the State. The copartnership and the corporation kept sepa-

rate books. The corporation had no employees on its payroll, and if defendant is correct, the party upon whom service was made therefore could not have been an employee or agent of the corporation.

The judge further found that had he come to the conclusion that even if defendant corporation had entered into the contract plaintiff nevertheless failed to establish its case by a preponderance of the evidence. He called attention to the fact that the contract provided that plaintiff had the right to terminate at any time, and that plaintiff knew that the agreement provided that defendant did not guarantee any results because it had to deal with human beings and could not anticipate the degree of resistance or cooperation it would receive, that management authority would have to cooperate with the defendant if the benefit of the work was to be realized. He further called attention to the reports that periodically were made to plaintiff and were signed, examined and approved by Charles A. Carolin, who represented plaintiff. Each invoice rendered by defendant was signed by Mr. Carolin with the words "approved as to hours and service." At one time when some objection was made to the charge for services of an employee whose work was not satisfactory to plaintiff, defendant made plaintiff an allowance. Plaintiff admitted that shortly after the contract was entered into the George S. May Company removed several of its employees from plaintiff's factory because plaintiff objected to their services; also, that with the consent of the George S. May Company, when the contract was still being performed, one of its employees was released to plaintiff. Evidently the same employee is still working for plaintiff as he appeared as a witness in its behalf at the trial.

It may also be noted that the larger part of the bill was incurred for the services of one employee,

whom George S. May Company placed in plaintiff's factory. He was there for several months. Plaintiff claims his services became valueless because the information in the notebook he made was not properly imparted to plaintiff's employees. Plaintiff concedes that some attempt was made to give some of the information to one of plaintiff's employees who was related to plaintiff's president but who was not hired on that account. Whether due to his fault or not, it was claimed that this employee was not able to make proper use of the information. There may be a question whether he was the proper man to receive or obtain this information. Again, the human element enters into the case as was stated in the contract. Assuming there is merit to plaintiff's claim, it could have insisted that defendant give information in a form in which it could be properly used and in an understandable manner to one capable of using it. The contract, however, was terminated by plaintiff before this was done.

The record also bears out the judge's conclusions that defendant was not served nor was a proper party defendant. It does not show who the partners were in the George S. May Company, although there is a strong inference that it consisted of George S. May and members of his family. Plaintiff does not base any claim of illegality on the ground that no certificate was filed by George S. May Company, therefore we do not discuss whether it was necessary to file a certificate or not. It does claim that the failure of George S. May Company to file any certificate was evidence of the fraudulent scheme. The record shows that the George S. May Company and its corporate predecessor were in the business of furnishing personal services. There is no claim that the George S. May Company had any assets in Michigan whatsoever. Plaintiff claims that it is an inescapable conclusion that the cor-

poration adopted the subterfuge of operating under the name of George S. May Company to avoid payment of the privilege fees in the various States in which it was doing business. As there is no showing or claim that there were assets in this State, the privilege fees would have been comparatively small. We find nothing illegal in transferring a personal service business from a corporation to a partnership, a new and distinct entity. Plaintiff certainly was not defrauded thereby. It is very possible that the organizers of the copartnership in the exercise of prudent business judgment did not incorporate so as to avoid the making out of numerous reports and the incidental details and legal expense of taking out licenses in many, if not all, of the 48 States. There was no legal obligation to do so. There is not an iota of testimony showing that the partnership did anything except what it had a legal right to do. Neither the plaintiff nor the State was deceived or defrauded. George S. May as a member of the partnership became legally responsible for all liabilities, whereas as a stockholder in the corporation his liability would have been limited. As the principal stockholder of the corporation, if the stock was of value, his personal net worth and financial responsibility would be enlarged. The partnership was engaged in a legitimate business not forbidden by law. We have had cases where the reverse situation presented itself and where we did not fasten liability upon the one with whom the contract was made. In *Finley* v. *Union Joint Stock Land Bank,* 281 Mich. 214, 220, we said:

"The investment company had an independent corporate existence and charter; it filed its annual reports; kept its own minutes of its meetings and from time to time it held meetings of its stockholders

and directors. It was organized as a profit-sharing corporation; the profits, if any, were to go to its individual stockholders. The relationship existing between this corporation and the land bank was such that when the investment company made a loan on real estate or purchased realty subject to the first mortgage held by the land bank it used its own judgment as to what loans it would make,''

and also quoted at length from the syllabus of *North v. Higbee Co.,* 131 Ohio St. 507, (3 N. E. [2d] 391):

''The separate corporate entities of a parent and subsidiary corporation will not be disregarded and the parent corporation will not be held liable for the acts and obligations of its subsidiary corporation, notwithstanding the facts that the latter was controlled by the parent through its stock ownership, and that the officers and directors of the parent corporation were likewise officers and directors of the subsidiary, in the absence of proof that the subsidiary was formed for the purpose of perpetrating a fraud and that domination by the parent corporation over its subsidiary was exercised in such manner as to defraud complainant.''

In *Gledhill* v. *Fisher & Co.,* 272 Mich. 353, 363 (102 A. L. R. 1042), we said:

''To permit a creditor who contracted with his eyes open and charged with actual constructive notice of the limitations upon the corporation's liability to go behind the corporate organization and reach the property of individual stockholders is to overturn the entire historic and legal conception of a private corporation, and its effect to discourage the joint venture of combined capital in industrial enterprises and to discourage ventures in business and commercial enterprises.''

However, even if there were any merit to the claim that plaintiff's contract was with the corporation,

we believe the judge was correct in holding plaintiff did not sustain the burden of showing liability on the part of defendant.

Plaintiff contends that under the laws of this State the contract was null and void from its inception and even though it had received full consideration for its money, it still had a right to recover all these moneys paid on a contract illegally entered into by a foreign corporation. This may be true in some States. Our attention has been called to few cases on the subject. Plaintiff stresses the case of *Automotive Material Co.* v. *American Standard Metal Products Corp.*, 232 Ill. App. 532, which contains some statements supporting plaintiff's contention. The facts were entirely different. The claim was for royalties under a patent and the contract was largely executory. Inasmuch as the case was reversed on other grounds by the supreme court of Illinois in 327 Ill. 367 (158 N. E. 698), the case is of very little assistance. Plaintiff's claim, in the final analysis, is somewhat analogous to a rescission of a contract because it was illegal not in the sense of *malum in se* but *malum prohibitum*. Had this been an executory contract, there would be merit in plaintiff's contention, but here we have an executed contract where plaintiff cannot return consideration consisting entirely of personal services. We do not believe that plaintiff can keep all of the benefits of a contract and at the same time recover what it had paid for them. Had defendant furnished plaintiff with tangible property of unquestioned value over which there was no dispute, we do not believe that plaintiff could retain the property and bring suit for all moneys paid for it and preclude defendant from defending the suit. This is not a case where a foreign corporation, without qualifying in the State, brings an original action in assumpsit in the

courts of this State, although we have held that such a plaintiff may recover its property in a replevin proceeding or bring trover proceedings. *Lu-Mi-Nus Signs Co. v. Regent Theatre Co.*, 250 Mich. 535; *Mojonnier Bros. Co. v. Detroit Milling Co.*, 233 Mich. 312; *Hallet & Davis Piano Co. v. Droste*, 213 Mich. 381; *Rex Beach Pictures Co. v. Harry I. Garson Productions*, 209 Mich. 692. Nor is it a case where a foreign corporation similarly situated claims a setoff in excess of the amount demanded by plaintiff.

Plaintiff further claims that inasmuch as defendant did not appeal from the denial of its motion to quash service of process, there is no jurisdictional question before this court. The trial court held in its final opinion that the party served with process was not an agent, officer or employee of defendant so as to make defendant amenable to process within the State of Michigan. Plaintiff further contends that as defendant did not file a cross-appeal from the order denying its motion to dismiss for the reason, as it claimed, that it did not enter into a contract with plaintiff, and as judgment was entered in favor of defendant on the merits, therefore, there was no adjudication that defendant did not execute the contract. The opinion squarely holds that defendant corporation did not make the contract. The judgment of no cause of action following the opinion was entered in favor of defendant against plaintiff. The judgment is all embracing and when taken in connection with the opinion it did not necessitate a cross appeal by defendant. The technical objections made by plaintiff do not affect the result. We further find that the judgment is not contrary to the preponderance of evidence.

The statute upon which possibly plaintiff relies is 3 Comp. Laws 1929, § 14027 (Stat. Ann. § 27.671),

which, while it forbids such foreign corporation from maintaining any action founded upon an act forbidden by statute in this State, it does not state that it is precluded from defending a claim for liability in a suit brought against it in this State. It is not necessary for us to construe this statute further than to say that it does not prevent a defendant from defending a claim such as presented in this case. In the case of *Bishop* v. *Hannon Real Estate Exchange,* 267 Mich. 575, 577–579, involving the right to return moneys paid a foreign corporation which had failed to qualify as a real estate salesman in Wisconsin, we said:

"Plaintiffs claim that the contracts were absolutely void under the Wisconsin statute,* that there was, therefore, nothing to rescind, and accordingly no tender was necessary. We do not believe there is any question but that the wording of the Wisconsin statute heretofore quoted makes the contracts merely voidable, and not void. While the statute provides that such contracts shall be wholly void as to the offending party, it nevertheless states that they shall be enforceable against such party. There has been considerable confusion in the use of the words 'void' and 'voidable,' and the courts have not hesitated to construe 'void' as meaning 'voidable' where it is apparent that the latter term expresses the result intended. We shall limit our discussion to a few cases in Wisconsin and Michigan, the courts of both States having uniformly construed 'void' as meaning 'voidable' under conditions similar to those in the instant case.    *    *    *

"The present suits were in assumpsit for the return of moneys paid under a 'voidable' contract. They could, therefore, not be brought until a proper

---

* Wis. Stat. 1923, §§ 136.01, 226.02.—Reporter.

rescission had taken place, by plaintiffs' returning or offering to return to defendant that which they had received.''

Judgment affirmed, with costs to defendant.

Starr, C. J., and North, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred. The late Justice Wiest took no part in the decision of this case.