GILL *v.* S. H. B. CORPORATION.

1. CORPORATIONS—FOREIGN—CERTIFICATES—CONTRACTS.

Unless a foreign corporation holds an unrevoked certificate that it has complied with the laws of Michigan with respect thereto, it can make no valid contracts in this State legally enforceable by the corporation (Act No. 327, § 95, Pub. Acts 1931).

2. SAME—UNCERTIFICATED FOREIGN CORPORATION—EXECUTORY MICHIGAN CONTRACTS.

A Michigan contract by an uncertificated foreign corporation is not null and void from its inception but, while executory, is voidable at the option of the other contracting party (Act No. 327, § 95, Pub. Acts 1931).

3. SAME—CONTRACTS—EXECUTORY CONTRACTS—ESCROWS.

The fact that a small sum, under an amended contract with a foreign corporation whose certificate to do business had been revoked when amendment was made, had been withheld from plaintiffs under an escrow agreement makes the amended contract no less executed since the plaintiffs' rights to such sum, if any, were thereafter governed, not by the amended contract, but entirely by the escrow agreement (Act No. 327, § 95, Pub. Acts 1931).

4. SAME—EXECUTED AMENDED CONTRACT—REVOKED CERTIFICATE OF FOREIGN CORPORATION.

Where plaintiffs had made a valid original contract with a defendant foreign corporation and later amended the contract at a time when defendant's certificate to do business had been revoked, plaintiffs may not, after the amended contract becomes executed, revoke it and recover additional sums that would have been due under the original contract (Act No. 327, § 95, Pub. Acts 1931).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 23 Am. Jur., Foreign Corporations, § 347 *et seq.*
[3, 4] 23 Am. Jur., Foreign Corporations, § 356.
[6] 23 Am. Jur., Foreign Corporations, § 335.
[7] 17 Am. Jur., Duress and Undue Influence, §§ 7, 16.

5. SAME—FOREIGN CORPORATIONS—REVOKED CERTIFICATE TO DO BUSINESS—RELEASE.

One contracting with a foreign corporation, may, after its certificate to do business in this State has been revoked, execute a valid release from further liability.

6. SAME—FOREIGN CORPORATIONS—RELEASE—REVOKED CERTIFICATE TO DO BUSINESS.

A valid release from further liability may be interposed as a defense to an action brought against a foreign corporation whose certificate to do business in this State was revoked at time release was executed as the lack of a valid certificate does not bar the corporation from defending itself in the courts (Act No. 327, § 95, Pub. Acts 1931).

7. CONTRACTS—AMENDMENT—WITHHOLDING OF FUNDS DUE—RELEASE—DURESS.

Where plaintiffs agreed to construct 108 houses for defendant foreign corporation on a cost-plus-fixed-fee basis upon lots defendant had represented that it owned, and after construction had been commenced on 51 houses the contract was amended to limit construction to 51 houses on a fixed-price basis on threat of abandoning the project and later plaintiffs released defendant of any and all claims against it arising out of the original agreement, as amended, in order to obtain money with which to pay subcontractors and materialmen, the withholding of sums due from defendant only until release was signed by plaintiffs did not constitute legal duress.

Appeal from Wayne; Fitzgerald (Frank), J. Submitted October 6, 1948. (Docket No. 25, Calendar No. 44,141.) Decided November 12, 1948.

Assumpsit by K. F. Gill and others, a limited partnership doing business as the John Gill & Sons Company, against S. H. B. Corporation, an Ohio corporation, for money claimed to be due under a written contract. Motion to dismiss granted. Plaintiffs appeal. Affirmed.

*Frank Day Smith,* for plaintiffs.

*Moll, Desenberg & Purdy,* for defendant.

DETHMERS, J. Plaintiffs appeal from an order dismissing the case for failure of the declaration to state a cause of action.

Taking the well-pleaded matters in the declaration as true, it appears that defendant is an Ohio corporation admitted to do business in Michigan on March 30, 1943; that on May 24, 1943, plaintiffs entered into a written agreement with defendant to construct 108 dwelling houses on a cost-plus-fixed-fee basis upon lots in Wayne county which defendant had represented it owned; that after plaintiffs had begun construction of 51 houses they learned that defendant did not own all of the lots involved; that defendant's certificate to do business in Michigan was revoked on August 31, 1943, for failure to pay the foreign corporation tax; that on January 1, 1944, defendant by threatening to abandon the building project and failing to pay what it then owed plaintiffs, induced them to (1) advance money to enable defendant to purchase lots and (2) execute an amendment to the original building agreement reducing the number of houses to be built to 51 and providing for payment therefor on a fixed-price basis; that thereafter plaintiffs completed construction of the 51 houses, received payment therefor in accord with the terms of the amended contract, and on October 12, 1944, executed a release of any and all claims against defendant arising out of said original agreement, as amended, for construction of said dwellings; that plaintiffs signed the release in order to obtain money due from defendant, needed to pay subcontractors and materialmen, which defendant refused otherwise to pay; that at the times they executed the amended contract and release plaintiffs faced financial ruin in the event defendant did not pay them the sums then due; that on October 28, 1947, and on November 21, 1947, plaintiffs served notice on defendant that plaintiffs had elected to declare the

amended contract and release void for the reason that at the time of their execution defendant's certificate to do business in Michigan had been revoked.

Plaintiffs' suit was brought to recover the difference between the amount paid them by defendant as the total due under the amended contract and the amount which would have been due plaintiffs for construction of the 51 houses under the original agreement had it not been amended. Plaintiffs' theory is that the amendment to the original agreement and the release were voidable because executed at a time when defendant's certificate to do business in Michigan had been revoked and that both became void upon plaintiffs' election to declare them so; further, that they were void because plaintiffs executed them under duress and business compulsion exerted by defendant; that, therefore, plaintiffs are entitled to recover a balance which would have been due them under the original agreement executed at a time when defendant was licensed to do business in Michigan.

Unless a foreign corporation holds an unrevoked certificate that it has complied with the laws of Michigan with respect thereto, it can make no valid contracts in this State legally enforceable by the corporation. Act No. 327, § 95, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135–95, Stat. Ann. § 21.96); 3 Comp. Laws 1929, § 14027 (Stat. Ann. § 27.671). A Michigan contract by an uncertificated foreign corporation is not null and void from its inception but, while executory, is voidable at the option of the other contracting party. *Carolin Manufacturing Corp.* v. *George S. May, Inc.,* 312 Mich. 487. Here, however, plaintiffs had completed performance of all that was required of them under the amended contract and defendant had paid them everything due thereunder. The amended contract was then no longer executory but executed 3 years

prior to plaintiffs' notice declaring it void. The fact that a small portion of the balance due plaintiffs under the amended contract had been withheld under an escrow agreement makes the amended contract no less executed inasmuch as plaintiffs' rights to such sum, if any, were thereafter no longer based upon the amended contract but governed entirely by the escrow agreement. Plaintiffs' contention, therefore, that they can revoke the amended contract and recover under the original agreement because the amendment thereto was executed at a time when defendant was uncertificated is without merit. *Carolin Manufacturing Corp.* v. *George S. May, Inc., supra; Bishop* v. *Hannan Real Estate Exchange,* 267 Mich. 575.

Despite the fact that defendant's certificate was revoked at the time, it was competent for plaintiffs on October 12, 1944, to release defendant from all further liability. That release defendant is in no wise prevented by statute from raising as a defense to actions brought against it, defendant's lack of a certificate being no bar to its right to defend itself in the courts of this State. *Carolin Manufacturing Corp.* v. *George S. May, Inc., supra.*

The duress or business compulsion which plaintiffs allege caused them to execute the amended contract and release consisted of threats by the defendant to abandon the building project and failure by it to pay plaintiffs the sums then due them at a time when plaintiffs were desperately in need of funds and faced financial ruin in the event of their failure to collect. Relied on by plaintiffs is *Vyne* v. *Glenn,* 41 Mich. 112, in which the plaintiff therein, who was then involved in financial embarrassments, was induced by the defendant therein to give a receipt in full by threats to stop payments of money due plaintiff from other parties. This Court held that the receipt was obtained under duress and was therefore

void. To accept plaintiffs' contention that the *Vyne Case* is controlling here would be, in effect, to hold voidable every contract renegotiation or compromise settlement resulting from one party's refusal to pay the full amount then claimed by the other party to be due, particularly if the latter were, at the time, financially embarrassed. Such is not the law. As said in *Hackley* v. *Headley,* 45 Mich. 569:

"In what did the alleged duress consist in the present case? Merely in this: That the debtors refused to pay on demand a debt already due, though the plaintiff was in great need of the money and might be financially ruined in case he failed to obtain it. It is not pretended that Hackley & McGordon had done anything to bring Headley to the condition which made this money so important to him at this very time, or that they were in any manner responsible for his pecuniary embarrassment except as they failed to pay this demand. The duress, then, is to be found exclusively in their failure to meet promptly their pecuniary obligation. But this, according to the plaintiff's claim, would have constituted no duress whatever if he had not happened to be in pecuniary straits; and the validity of negotiations, according to this claim, must be determined, not by the defendants' conduct, but by the plaintiff's necessities. The same contract which would be valid if made with a man easy in his circumstances, becomes invalid when the contracting party is pressed with the necessity of immediately meeting his bank paper. But this would be a most dangerous, as well as a most unequal doctrine; and if accepted, no one could well know when he would be safe in dealing on the ordinary terms of negotiation with a party who professed to be in great need.

"The case of *Vyne* v. *Glenn,* 41 Mich. 112, differs essentially from this. There was not a simple withholding of moneys in that case. * * * The report, therefore, showed the same financial embarrassment and the same great need of money which is

claimed existed in this case, and the same withholding of moneys lawfully due, but it showed over and above all that an unlawful interference by defendant between the plaintiff and other debtors, by means of which he had stopped the payment to plaintiff of sums due to him from such other debtors. It was this keeping of other moneys from the plaintiff's hands, and not the refusal by defendant to pay his own debt, which was the ruling fact in that case, and which was equivalent, in our opinion, to duress of goods."

Similarly, in *Goebel* v. *Linn*, 47 Mich. 489 (41 Am. Rep. 723), this Court said:

"But for the pre-existing contract the one now questioned would probably have been fair enough, and if made with any other party would not have been complained of. The duress is therefore to be found in the refusal to keep the previous engagements. How far this falls short of legal duress was so recently considered by us in *Hackley* v. *Headley*, 45 Mich. 569, that further discussion now would serve no valuable purpose."

See, also, *Norton* v. *State Highway Department*, 315 Mich. 313.

The declaration did not allege facts amounting to duress in connection with plaintiffs' executing the amended contract and giving the release. The declaration failed to state a cause of action.

The order dismissing the case is affirmed, with costs to defendant.

Bushnell, C. J., and Sharpe, Boyles, Reid, North, Butzel, and Carr, JJ., concurred.