**JOHNSON & ANDERSON, INC., a Michigan Corporation, Plaintiff-Counter-Defendant,**

v.

**BARLOW ASSOCIATES MANAGEMENT CONSULTANTS, LTD., a Canadian Corporation, Defendant-Counter-Plaintiff.**

**Civ. A. No. 80–74081.**

United States District Court, E. D. Michigan, S. D.

Dec. 7, 1981.

---

**418**

Patrick B. McCauley, Nederlander, Dodge & McCauley, P. C., Thomas G. Rollins, Rollins & Rollins, Detroit, Mich., for plaintiff-counter-defendant.

Collister Johnson, Jr., Peabody, Rivlin, Lambert & Meyers, P. C., Washington, D. C., Robert G. Cutler, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant-counter-plaintiff.

## MEMORANDUM OPINION AND ORDER

COHN, District Judge.

### I.

The complaint in this case alleges breach of contract, professional malpractice, and breach of fiduciary duty * in defendant's performance of a contract for management consulting services. Defendant has counterclaimed for the amount claimed due and unpaid under the contract. Jurisdiction is based on diversity.

Now before the Court is plaintiff's motion for summary judgment on the counterclaim on the ground that it is barred by Section 1051 of the Michigan Business Corporation Act (the Act), Mich.Stat.Ann.

* This claim was dismissed on November 9, 1981.

§ 21.200 (1051) [M.C.L.A. § 450.2051], which provides in relevant part:

"(1) A foreign corporation transacting business in this state without a certificate of authority shall not maintain an action or proceeding in any court of this state, until the corporation has obtained a certificate of authority. An action commenced by a foreign corporation having no certificate of authority shall not be dismissed if a certificate of authority has been obtained before the order of dismissal.

. . . . .

(2) Failure of a foreign corporation to obtain a certificate of authority to transact business in this state does not impair the validity of a contract or act of the corporation and does not prevent the corporation from defending an action or proceeding in a court of this state."

Plaintiff says that a federal court sitting in diversity must apply this statutory bar as would a Michigan court. *Woods v. Interstate Realty*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). Defendant responds that because the counterclaim is compulsory, Fed.R.Civ.P. 13(a), the federal rules should prevail over what is essentially a procedural state "door-closing" statute. *Avondale Shipyards v. Propulsion Systems*, 53 F.R.D. 341 (E.D.La.1971); *see Hanna v. Plumer*, 380 U.S. 460, 470, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965).

Defendant, a Canadian corporation, concedes that it does not have a Michigan certificate of authority. However, it also contends that Section 1012 of the Act exempts it from the requirement of obtaining a certificate:

"Without excluding other activities which may not constitute transacting business in this state, a foreign corporation is not considered to be transacting business in this state for the purposes of this act, solely because it is carrying on in this state any 1 or more of the following activities: .... Transacting any business in interstate commerce."

Mich.Stat.Ann. § 21.20(1012)(1) [M.C.L.A. § 450.2012(1)].

Defendant finally takes the position that if the Court determines that the Act bars the counterclaim it will obtain the certificate.

There are no Michigan cases on point. The Court must therefore "make a considered, educated guess" as to what the Michigan Supreme Court would do. *Wells v. 10–X Manufacturing Co.*, 609 F.2d 248, 253 (6th Cir. 1979). Because Section 1051(2) of the Act explicitly permits an unqualified foreign corporation to defend an action brought against it, the Court is of the opinion that the Michigan Supreme Court would not interpret Section 1051(1) of the Act as barring a corporation which had not obtained a certificate from asserting a counterclaim arising out of the same transaction. Plaintiff's motion will be denied. There is no need to decide whether the Court is free not to apply Section 1051 of the Act because it is only a matter of state procedural law, *Avondale Shipyards, supra,* or whether defendant is exempt under Section 1012 of the Act as solely transacting business in interstate commerce.

## II.

### 1.

Adoption of the Act, Act 284, 1972 Mich. Pub. Acts, marked a significant shift in the sanctions applied against a foreign corporation which failed to obtain a certificate of authority before transacting business in Michigan. Under the predecessor statute, Section 95 of the Michigan General Corporation Act, Mich.Stat.Ann. § 21.96 [M.C.L.A. § 450.95] (repealed 1974), any contract made in Michigan by an unqualified foreign corporation was invalid; an action could not be maintained on the contract even if the corporation subsequently qualified. *Lake States Engineering Corp. v. Lawrence Seaway Corp.*, 15 Mich.App. 637, 647, 167 N.W.2d 320 (1969). The legislative ration-

ale for the severity of the sanction was a compulsion to comply with the registration requirements for foreign corporations through an *in terrorem* effect. *Id.*

### 2.

The Michigan Law Revision Commission which drafted the present act termed the sanction "often perverse". Michigan Law Revision Commission 5th Annual Report (Supplement), 1970, p. 289. By enacting Section 1051(2) of the Act, the legislature followed the Commission's recommendation and the example of § 124 of the American Bar Association Model Business Corporation Act by providing that failure to obtain a certificate of authority neither impairs the validity of a foreign corporation's contracts nor prevents it from defending an action in Michigan's courts.[1] Section 1051(1) of the Act further makes explicit what is only stated in the comment to § 124 of the Model Act: that an unqualified corporation can save its action by obtaining a certificate prior to dismissal. *See* Model Business Corp. Act Ann.2d (1971), § 124, ¶ 2, p. 774.

### 3.

The Michigan Supreme Court interpreted Section 1051 of the Act in *Thomas Industries v. Wells*, 403 Mich. 466, 270 N.W.2d 98 (1978); the decision reversed the Court of Appeals, which had held that a trial court properly dismissed an action by an unqualified foreign corporation with prejudice in order to preserve at least some of the *in terrorem* effect of the predecessor statute, 79 Mich.App. 463, 473, 262 N.W.2d 853 (1977). The Supreme Court in *Thomas Industries* held that the trial court should have given the corporation an opportunity to qualify once it had determined that the registration requirements were applicable in order to serve·the legislature's intent to relieve "the former harsh consequences of a failure of a foreign corporation to qualify to do business in Michigan". 403 Mich. at 472 n.2, 270 N.W.2d 98.

1. Under the predecessor General Corporation Act, a non-qualified corporation also had the right to defend an action brought against it. *Gill v. S. H. B. Corp.*, 322 Mich. 700, 704, 34 N.W.2d 526 (1948); *Carolin Manufacturing Corp. v. George S. May, Inc.*, 312 Mich. 487, 504, 20 N.W.2d 283 (1945).

#### 4.

Plaintiff relies on the "*in terrorem*" language of *Lake States Engineering* to argue that extending the statutory bar to counterclaims is necessary to accomplish the legislative purpose of punishing unqualified corporations for their "forbidden acts". As *Thomas Industries* makes clear, however, such reasoning is out-of-step with the intent of the current statute.

Just as the legislature allows an unqualified corporation to preserve an action by subsequently obtaining a certificate, it also permits an unqualified corporation to defend an action without obtaining a certificate at all. Even under the more punitive predecessor statute, a non-qualified foreign corporation was able to assert a claim for the balance due under a contract as a set-off in its defense. *Lake States*, 15 Mich. App. at 650–51, 167 N.W.2d 320. There appears to be little meaningful difference between allowing defendant's claim as a set-off and as a counterclaim. As the Court of Appeals for the Fifth Circuit pointed out in construing a substantially identical Mississippi statute:

> "Presumably, the . . . legislature would not have expressly permitted defense by nonqualifying corporate defendants but impliedly circumscribed the scope of that defense by denying the right to bring compulsory counterclaims or third-party complaints."

*Environmental Coatings, Inc. v. Baltimore Paint and Chemical Co.*, 617 F.2d 110, 112 (5th Cir. 1980).

#### III.

Plaintiff cites two Michigan cases holding that a statutory provision, now repealed, preventing unlicensed residential builders from bringing suit, supports a bar to any counterclaim or set-off. *Kirkendall v. Heckinger*, 403 Mich. 371, 269 N.W.2d 184

(1978); *Lindhout v. Ingersoll*, 58 Mich.App. 446, 449, 228 N.W.2d 415 (1975). Section 16 of the Michigan Residential Building Contractors Act, Mich.Ann. § 18.86(116) [M.C.L.A. § 338.1516] (repealed 1980), provided:

> No person engaged in the business or acting in the capacity of a residential builder and/or residential maintenance and alteration contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this act without alleging and proving that he was duly licensed under this act at all times during the performance of such act or contract."

As pointed out in *Lindhout*, 58 Mich.App. at 448, 228 N.W.2d 415, because a builder must allege that he was licensed "at all times" during the contract, he cannot enforce his contract by subsequent compliance. Thus the two statutes differ fundamentally in purpose. Section 116 of the Michigan Residential Building Contractors Act permanently denied the unlicensed builder compensation for work performed without a license as a deterrent to protect homeowners. *Id.* at 449, 228 N.W.2d 415. Section 1051 of the Act explicitly preserves the validity of contracts entered into at a time a foreign corporation was unqualified and bars actions on such contracts only if the corporation remains unqualified—not to protect the public but to encourage compliance with the corporate registration requirements.

Since the underlying contract of an unlicensed builder was invalid, he was equally barred from obtaining compensation on an initial action, counterclaim and set-off. In contrast, Section 1051 of the Act preserves the validity of defendant's contract and its right to defend; hence, *Lindhout* and *Kirkendall* are not relevant authority.[2]

2. Plaintiff cites two cases from other state courts holding that an unqualified foreign corporation is barred from asserting a counterclaim under the circumstances which obtain here. *Bozzuto's Inc. v. Frank Kantrowitz & Sons, Inc.*, 117 N.J.Super. 146, 283 A.2d 907 (1971), construing a provision virtually identi-

cal to Section 1051 of the Act, held that "shall not prevent such corporation from defending any action" were words of limitation intended to bar any kind of affirmative claim by a nonqualifying corporation even if brought as a counterclaim. This interpretation is less persuasive than that presented in *Environmental*

## IV.

Accordingly, for the reasons stated, plaintiff's motion for summary judgment on defendant's counterclaim is DENIED.

SO ORDERED.

*Coatings, supra.* The New Jersey court's concern that permitting counterclaims would be "an indulgent relaxation of qualifying requirements", 283 A.2d at 910–11, reflects the approach rejected by the Act. *Bozzuto's* is also distinguishable because there the unqualified corporation actually initiated the action, refused to qualify after its action was dismissed, and then brought the identical claim under the guise of a counterclaim to the counterclaim asserted in defense to its original action. *Gibraltar Construction and Engineering, Inc. v. State National Bank of Bethesda*, 265 Md. 530, 290 A.2d 789 (1972), is also not on point because the Maryland statute there construed contained no provision permitting an unqualified corporation to defend.