TRANSIT BUS SALES v. KALAMAZOO COACHES, Inc.

KALAMAZOO COACHES, Inc., v. TRANSIT BUS SALES.

Nos. 9744, 9745.

Circuit Court of Appeals, Sixth Circuit.

Dec. 6, 1944.

---

Adolph J. Bieberstein, of Madison, Wis. (Bull, Biart & Bieberstein, of Madison, Wis., on the brief), for Transit Bus Sales.

Edward J. Ryan, of Kalamazoo, Mich. (Frank F. Ford, of Kalamazoo, Mich., and Alexander, McCaslin, Cholette & Buchanan, of Grand Rapids, Mich., on the brief), for Kalamazoo Coaches, Inc.

Before SIMONS, ALLEN, and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

In a suit by a Wisconsin distributor upon a contract for exclusive territory for the sale of interurban buses of a Michigan manufacturer, the principal question in the appeal is the measure of damages to which the distributor was entitled by reason of its breach. In the cross appeal, the manufacturer assails the judgment on the ground that the distributor, being a foreign corporation, is unable to sue in a Michigan court because it was doing business in that state without a license in contravention of Michigan statutes.

By the contract of August 27, 1940, here involved, the appellant was given the exclusive privilege of selling the appellee's coaches in a number of states, including the Upper Peninsula of Michigan. The contract was drafted by the appellant in Wisconsin pursuant to a previous verbal agreement, signed by it in Wisconsin, and sent to the appellee in Michigan for approval and signature. The appellee returned it with a rider containing provisions which had been previously agreed upon, but which, through apparent inadvertence, had been omitted. Before sending the rider to the appellant, the appellee had initialed it, and it was agreed to by the appellant initialing it in Wisconsin. In this situation the appellant claims that the agreement was a Wisconsin contract controlled by the law of that state. The District Judge so held, and we agree. With regard to the validity and interpretation of a contract, the lex loci contractus controls, and in this respect there is no difference between Michigan and Wisconsin law. Millar v. Hilton, 189 Mich. 635, 155 N.W. 574; International Harvester Co. v. McAdam, 142 Wis. 114, 124 N.W. 1042, 26 L. R.A.,N.S., 774, 20 Ann.Cas. 614. The general rule is that a contract is made where the last act necessary to make it a binding obligation is performed. Williston on Contracts, § 97; Restatement, § 74. The final

approval of the rider was the last act in consummating the agreement. The appellee's contention that the plaintiff is estopped to claim that the agreement was a Wisconsin contract, because the plaintiff drew it and sent it to the defendant with representation that it contained the entire agreement, must be rejected in the absence of clear proof that the defendant relied upon such representation. It could have withheld acceptance until the initialed rider was returned by the plaintiff. It chose, however, to return the contract, as amended, for completion in Wisconsin. There was no estoppel.

By the terms of the agreement between the parties the manufacturer granted the distributor the exclusive right and privilege to buy for resale and to sell its product in the territory assigned to it, and agreed that if any coaches were sold in such territory by it, itself, or by any of its other dealers, distributors, or representatives, the distributor would receive from the manufacturer 20% of the list price of such product even though the distributor was not instrumental in procuring the sales. The agreement was to continue for a period of three years beginning with the date of the receipt, by the distributor, of the first coach, and it is conceded that this occurred on September 23, 1940. The contract also contained provision for its termination upon certain notice, and on October 27, 1941, the manufacturer undertook such cancellation to become effective December 31, 1941. The trial court instructed the jury, that such notice was not legally effective, and that the contract remained in full force and effect after that date. No question, however, is raised by the appeal as to the correctness of the instruction, and so we need not consider the infirmities of the notice. Prior to the notice, however, the manufacturer sold three buses in the distributor's territory, upon which the distributor's 20% commission amounted to $2,380. Subsequent to the notice the manufacturer sold 15 buses in the distributor's territory, upon which the commission, if the distributor was entitled to it, would be $12,398.

The court directed a verdict for the plaintiff for the full amount of the commissions on sales made in the distributor's territory prior to the abortive effort to cancel, but denied any recovery to the distributor for sales made thereafter, on the ground that the measure of the distribu-

tor's damage was the profit which it might have realized had it been permitted fully to perform the contract, and since there was no proof on the part of the distributor, of its cost of making sales, there was no basis upon which the jury could arrive at its loss of profits, the burden being upon it to establish, with reasonable certainty, the amount that it would have had to expend in making sales.

The usual rule governing the measure of damages for breach of contract is the measure applicable under the law of the place of performance. Restatement, Conflict of Laws, § 382. If that rule applies, the law of Wisconsin would govern since, under the contract, the buses were to be shipped to the distributor by the manufacturer, and delivered by the distributor to its customers. It may be conceded that Wisconsin law would permit recovery of commissions, but it has no application in Michigan. Walton School of Commerce v. Stroud, 248 Mich. 85, 226 N. W. 883; Mt. Ida School v. Rood, 253 Mich. 482, 235 N.W. 227, 74 A.L.R. 1325. In these cases it was held that a party to a contract which is still partly executory may repudiate it and be liable thereafter only for the breach; that this is a rule of procedure or pertaining to the remedy, rather than one of substantive law, so that the law of the forum governs. The effect of the rule applied in both cases was to deny recovery to the plaintiff, which had not proved its damages, even though the law of the state where the contract was concluded, or of the state of performance, would have permitted recovery. While the Michigan rule has been sharply criticized (see dissent of Judge Wiest in Walton School of Commerce v. Stroud, supra; Ailes on "Substance and Procedure in the Conflict of Laws," 39 Mich. Law Review, pages 393, 411), we are not, since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, permitted to form an independent judgment upon questions involving local law, and are compelled, in diversity of citizenship cases, when deciding questions of conflicts of law, to follow the rules prevailing in the state where the federal court sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin, Adm'r, v. McCoach, Trustee, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462. This is without regard to whether the rule relates to substance or to procedure. Subject to review of a federal question, the state is free to determine, in a given matter, whether it is to be governed by the law of the forum or by some other law.

The appellant advances the contention that the proper measure of damages, under Michigan law, is the commissions, rather than profits, in reliance upon C. A. S. Engineering Co. v. H. J. Walker Co., 216 Mich. 113, 184 N.W. 431. That case, however, did not involve a wrongful cancellation amounting to an anticipatory breach of contract, and the commissions there recovered were on sales made during the period when the contract was in force and was being performed by both parties. It supports the judgment for the commissions earned up to the time of the breach, but furnishes no precedent for their allowance thereafter in the absence of proof of damage. Callender v. Myers Regulator Co., 250 Mich. 298, 230 N.W. 154, likewise gives the appellant no support. There it was held that the plaintiff must not only prove his probable sales and commissions, but must also prove what he saved by his inability to perform, and in the absence of such proof, may not recover. This is but the application of the familiar rule requiring mitigation of damages after a breach, or, as Professor Williston so succinctly puts it, "a plaintiff cannot hold a defendant liable for damages which need not have occurred." Williston, on Contracts, § 1298.

In its cross-appeal the appellee relied upon Act 327 of the Public Acts of 1931, § 93, which provides that it shall be unlawful for a foreign corporation to carry on business in Michigan until it shall have procured a certificate of authority for that purpose, that without such certificate it is incapable of making a valid contract in the state, nor to maintain any action upon any act that is forbidden to be done by the corporation within the state. It has been held, however, that the mere taking of orders within a state for goods to be shipped into it is interstate commerce and does not involve "doing business" within the meaning of such statutes, and that the installation of goods, if so complicated that they cannot be safely left to local talent, does not give the transaction a local flavor. York Mfg. Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963, 11 A.L.R. 611, followed and applied in Westerlin & Campbell Co. v. Detroit Milling Co., 233 Mich.

384, 206 N.W. 371. The cross-appellant urges that the contract contemplated that the appellant would not only deliver buses to customers, some of whom might be in Michigan, but would also service them and teach local mechanics the intricacies of their electrical and air systems. It relies upon Haughton Elevator & Mach. Co. v. Detroit Candy Co., 156 Mich. 25, 120 N.W. 18, where it was held that a contract specifically requiring the plaintiff to install one elevator and repair another constituted doing business in the state. The contract in that case, however, expressly provided for the repair, while that here involved makes no mention of servicing, and the record discloses that no buses sold by the manufacturer to the distributor were serviced by the distributor in Michigan. Such servicing as was done by the distributor was in connection with sales of Ford buses, not here involved, and the inhibition of the statute in respect to the maintaining of an action is limited to such action as is "founded upon such act, or upon any liability or obligation express or implied, arising out of, or made or entered into in consideration of such act." There is nothing in the present contract which contemplates servicing of the manufacturer's buses in Michigan, the suit is not upon a contract for the sale of Ford buses, and does not arise out of any act done or contemplated to be done, under the contract here involved. The Michigan statute does not preclude a suit upon it in Michigan.

The cross-appeal is dismissed and the judgment below affirmed.