LAKE STATES ENGINEERING CORPORATION v.
LAWRENCE SEAWAY CORPORATION

LAWRENCE SEAWAY CORPORATION v. UNITED
STATES FIDELITY & GUARANTY COMPANY

1. CONTRACTS—SITUS—INTENTION OF PARTIES.
   When and where parties in different states become contractually bound depends on their intention as manifested by their verbal statements and conduct in the light of all the circumstances.

2. SAME—SITUS—FOREIGN CORPORATION—VALIDITY.
   A contract made *outside* Michigan by a foreign corporation not then qualified to do business in Michigan is a lawful contract, not affected by the statute rendering such a contract invalid if made *in* Michigan, even though it contemplates that performance will include the doing of acts in Michigan requiring qualification (MCLA § 450.95).

3. SAME—SITUS—FOREIGN CORPORATION—SUMMARY JUDGMENT.
   Summary judgment dismissing an action on a contract by a foreign corporation not qualified to do business in Michigan at the time the contract was made on the ground that the contract was invalid under the general corporation act would be improper when rendered without a trial hearing to determine whether the contract was made in Michigan or outside Michigan (MCLA § 450.95; GCR 1963, 116).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Conflict of Laws § 38 *et seq.*
[2, 3] 36 Am Jur 2d, Foreign Corporations § 310.
[4, 6] 36 Am Jur 2d, Foreign Corporations § 298 *et seq.*
[5] 36 Am Jur 2d, Foreign Corporations § 301.
[7, 8] 36 Am Jur 2d, Foreign Corporations § 306.
[9] 36 Am Jur 2d, Foreign Corporations § 300.
[10] 36 Am Jur 2d, Foreign Corporations § 282.
[11] 36 Am Jur 2d, Foreign Corporations § 312.
[12, 13] 33 Am Jur, Licenses § 68 *et seq.*

4. ACTION—STATUTES—PROHIBITION—FOREIGN CORPORATIONS.

    Statutory prohibition against suit by foreign corporation under certain circumstances functions as a penalty tending to compel compliance with statutes requiring foreign corporations to qualify to do business in Michigan (MCLA § 600.2021).

5. CORPORATIONS—FOREIGN CORPORATIONS—QUALIFICATION—UNLAWFUL ACTS.

    Compliance with Michigan qualification requirements by a foreign corporation after it has committed acts unlawful because it was not qualified does not make those acts lawful.

6. CONTRACTS—FOREIGN CORPORATION—QUALIFICATION—PERFORMANCE—ENFORCEABILITY.

    A valid contract made by a foreign corporation not qualified to do business in Michigan is statutorily barred of enforcement by the foreign corporation if its performance constituted doing business in Michigan and the corporation remained unqualified during performance (MCLA § 600.2021).

7. SAME—FOREIGN CORPORATION—VALIDITY—EXECUTED CONTRACT.

    Validity of a contract, one of the parties to which is a foreign corporation not qualified to do business in Michigan, may not be attacked on that ground by the other party to the contract when the contract has been fully executed by both parties (MCLA § 450.95).

8. SAME—PARTIAL PERFORMANCE—TERMINATION BY ONE PARTY—EXECUTION.

    Termination of a contract by one party after partial performance by the other party does not convert the contract from an executory to an executed contract.

9. CORPORATIONS—FOREIGN CORPORATIONS—UNLAWFUL ACTS—ADDITIONAL PENALTIES.

    Legislative intent in making violation of general corporation law by a foreign corporation carrying on business in the state when unqualified a misdemeanor *held* to be to add still another sanction to the law, not to eliminate the sanction barring action by the foreign corporation (CLS 1961, § 450.93; MCLA § 450.93a).

10. ACTION—COUNTERCLAIMS—OFFSET BY FOREIGN CORPORATION.

    Foreign corporation, not qualified to do business in Michigan, and thereby precluded from maintaining an action seeking affirmative recovery against a Michigan defendant in an action

arising out of business done in Michigan, may nevertheless assert its claims as an offset to a counterclaim of the Michigan defendant (MCLA § 600.2021).

11. CORPORATIONS—FOREIGN CORPORATIONS—SURETY—SUBROGATION—UNENFORCEABLE CONTRACT.

A surety for a foreign corporate principal, barred by statute from enforcing a contract in Michigan because it performed acts in Michigan when not qualified by law to perform such acts, may not recover from the other party to the unenforceable contract moneys which would be due on the contract but for its unenforceability, even to the extent of moneys paid by the surety to subcontractors of the foreign corporation, at least where there is no claim that the foreign corporation is uncollectible; to allow such a recovery to the surety would be to relieve the principal to that extent and thus to subvert the policy behind statutes making the contract unenforceable (MCLA §§ 450.93, 600.2021).

12. CONTRACTS—DEFENSES—UNLICENSED BUILDER—STATUTE.

An unlicensed builder, by statute, may not maintain an action for compensation for the performance of his contract, but is not prevented from recovering damages from a subcontractor for the subcontractor's nonperformance of the subcontract (MCLA § 338.1516).

13. SAME—UNLICENSED BUILDER—STATUTORY DISABILITY—COMMON-LAW DISABILITY.

Residential builder licensing statute providing that nonlicensed builder may not maintain an action to recover for unlawful performance of a contract for which a license is required *held* to supersede the broader common-law principle making subcontracts entered by the builder in connection with the unlawful contract voidable at the option of the other party (MCLA §§ 338.1501, 338.1516).

Appeal from Wayne, Rashid (Joseph G.), J. Submitted Division 1 March 9, 1967, at Detroit. (Docket Nos. 849, 850.) Decided January 31, 1969. Application for leave to appeal filed by defendant Lawrence Seaway Corporation and defendant United States Fidelity & Guaranty Company February 21, 1969.

Complaint by Lake States Engineering Corporation, an Illinois corporation, against Lawrence Seaway Corporation and 50 additional defendants to recover damages for breach of a building contract. Counterclaim by Lawrence Seaway Corporation against Lake States and United States Fidelity & Guaranty Company, surety for Lake States' performance and payment bonds in favor of Lawrence. Cross-claim by United States Fidelity & Guaranty Co. against Lake States Engineering Corporation. Accelerated and summary judgments dismissing the claims of all parties except judgments for laborers and materialmen in the amount of $92,217.67 against Lake States and United States Fidelity & Guaranty Co. Lake States and United States Fidelity & Guaranty Co. appeal. Lawrence Seaway Corporation cross-appeals the dismissal of its claims against Lake States and United States Fidelity & Guaranty Company. Judgment dismissing the claims of Lake States and United States Fidelity & Guaranty Company affirmed. Lawrence Seaway counterclaim remanded for trial.

*Merle R. Jenkins,* for plaintiff.

*Arthur J. Hass,* for defendant.

LEVIN, J. Lake States Engineering Corporation, an Illinois corporation, brought this action against Lawrence Seaway Corporation to recover damages for alleged breach of a building construction contract between Lake States, as subcontractor, and Lawrence, as general contractor. Lawrence counterclaimed for Lake States' alleged breach of the same contract. United States Fidelity & Guaranty Company was surety on Lake States' performance and payment bonds in favor of Lawrence.

The questions presented are:

1) Is Lake States precluded from maintaining this action because of failure to have qualified to do business in Michigan?

2)' Even if Lake States cannot recover from Lawrence, may Lake States' surety, USF & G, recover from Lawrence the amounts USF & G pays labor and material claimants?

3) Is Lawrence barred by its failure to have obtained a residential builder's license from recovering on its counterclaim against Lake States?

The trial judge granted motions for accelerated and summary judgment dismissing the claims of all parties except that judgments totaling $92,217.67 were entered against Lake States and USF & G in favor of labor and material suppliers who were additional defendants. Lake States and USF & G appealed generally. Lawrence cross-appealed the dismissal of its claims against Lake States and USF & G. Neither Lake States nor USF & G have prosecuted their appeals against the labor and material suppliers.

We affirm the judgment dismissing the claims of Lake States and USF & G and remand for trial on Lawrence's counterclaim.

I.

The contract, entered into in June or July, 1962, provided that Lake States would construct the foundation caissons for the Jeffersonian Apartments in Detroit. Lake States commenced performance. Before the dispute arose Lawrence had paid Lake States $252,810 of the $450,000 contract price.

Lake States suspended work in November, 1962, after it failed in its attempts to get Lawrence to agree to pay additional amounts because of certain

subsurface conditions allegedly encountered by Lake States. Lake States claimed that Lawrence was obliged under the contract to pay more on that account. This Lawrence denied. Subsequently Lawrence hired another subcontractor to complete the caisson work.

Lake States claims Lawrence owes it approximately $555,000. The amount of Lawrence's counterclaim, as stated in the counterclaim appended to Lawrence's answer, was $300,000.

Section 95 of the Michigan general corporation act (MCLA § 450.95 [Stat Ann 1963 Rev § 21.96]) provides that "no foreign corporation shall be capable of making a valid contract in this state until it shall have fully complied with the requirements of the laws of this state with respect thereto, and at the time holds an unrevoked certificate to that effect."

In June, 1962, Lawrence's president mailed the unsigned proposed form of contract from Detroit to Lake States in Chicago, Illinois. Lawrence's covering letter asked Lake States to sign the contract and added: "When the date of the contract is definitely determined, we will then sign the contracts and supply the dates for these contracts." Lake States signed in Chicago and later Lawrence signed in Detroit.

Lake States claims the final acceptance of the contract occurred in Chicago, Illinois, when Lake States signed the contract, while Lawrence claims the contract did not become binding until it subsequently signed the contract in Detroit.

The question of when and where the parties became contractually bound depends on their intention as manifested by their verbal statements and conduct in the light of all the circumstances.[1] The trial

---

[1] "If from a promise, or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise

judge did not make specific findings on that question. Furthermore, the question could not be decided without a trial hearing[2] and, thus, could not be decided on the record so far made. Accordingly, we may not affirm the trial judge on the ground that the contract was invalid under § 95 of the general corporation act. But that does not end our inquiry.

If, as we must now assume for the purpose of reviewing the judgment entered by the trial judge, the contract was made in Illinois, as Lake States claims, it was a lawful contract even though Lake States was not then qualified to do business in Michigan and the contract contemplated that Lake States would do acts in Michigan requiring qualification. *Whitehead & Kales Co.* v. *Taan* (1926), 233 Mich 597, 600, 601; *Westerlin & Campbell Co.* v. *Detroit Milling Co.* (1925), 233 Mich 384, 386.[3]

Lawrence asserts that Lake States' actions in Michigan pursuant to the contract were nevertheless unlawful because Lake States was not qualified to do business in Michigan when it acted and, thus, even if the contract was valid, Lake States may not recover on such unlawful acts.

Section 93 of the general corporation act (MCLA § 450.93 [Stat Ann 1963 Rev § 21.94]) provides that it is "unlawful" for an unqualified foreign corporation to carry on its business in this State. Lake

---

or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed purpose until he has given a further expression of assent, he has not made an offer." Restatement of the Law, Contracts, § 25, p 31. See, also, *Simmons and Simmons Construction Co., Inc.* v. *Rea* (1955), 155 Tex 353 (286 SW2d 415).

[2] GCR 1963, 116.3, 117.2(3). See, also, committee comment to rule 116, particularly subdivision (4) reprinted as annotation, 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 324, and *Durant* v. *Stahlin* (1965), 375 Mich 628, 644.

[3] Lake States could have become domesticated between the making of the contract and its performance. Had it done so, its acts of performance in Michigan would have been entirely lawful. *Whitehead & Kales Co.* v. *Taan* (1926), 233 Mich 597.

States conceded that it was doing business in Michigan and that it did not have a certificate authorizing it to do so as required by § 93.

Among other cases, Lawrence cites *Imperial Curtain Co.* v. *Jacob* (1910), 163 Mich 72. In that case the foreign corporation was not allowed to recover for services rendered in Michigan pursuant to a contract apparently made in Pennsylvania (p 77):

"Even though it should be held that the contract was accepted in Philadelphia, we cannot see how this fact would make any difference in the disposition of the case. *The statutes with reference to foreign corporations were not made merely for the purpose of preventing foreign corporations from coming into Michigan and making contracts here, but were passed principally for the purpose of preventing foreign corporations from carrying on their business in this State without subjecting themselves to certain liabilities and obligations.* It was the prevention of work within the State that was aimed at, and it was for work and service in this State that this suit was brought, as appears by the record." (Emphasis supplied.)

Also denying recovery, not because the contract was made in Michigan but because its performance by the unqualified foreign corporation constituted doing business in Michigan, are *Nernst Lamp Co.* v. *Conrad* (1911), 165 Mich 604; *General Highways System* v. *Dennis* (1930), 251 Mich 152; *Decorators Supply Co.* v. *Chaussee* (1920), 211 Mich 302; *Smilansky* v. *Mandel Bros.* (1931), 254 Mich 575; *Columbus Services, Inc.* v. *Preferred Building Maintenance, Inc.* (WD Mich, 1967), 270 F Supp 875, 879, 880; *A. H. Andrews Co.* v. *Colonial Theatre Co.* (ED Mich, 1922), 283 F 471. See, also, *Watts Construction Company* v. *Joint Clutch & Gear Service, Inc.*

(1949), 325 Mich 548; *Mathews Conveyer Co.* v.
*Palmer-Bee Co.* (CA 6, 1943), 135 F2d 73.

RJA § 2021 (MCLA § 600.2021 [Stat Ann 1962
Rev § 27A.2021]) provides:

"When, by the laws of this state, any act is for-
bidden to be done by any corporation, or by any
association of individuals, without express authority
by law, and such act was done by a foreign corpora-
tion, the foreign corporation shall not maintain any
action founded upon such act, or upon any liability
or obligation, express or implied, arising out of, or
made or entered into in consideration of such act."

In doing business in Michigan without having
qualified to do so, Lake States, a foreign corporation,
in the words of RJA § 2021, thereby did an "act
* * * forbidden to be done * * * without ex-
press authority by law." Accordingly, it may "not
maintain any action founded upon such act," the act
of doing business in Michigan, or "upon any liability
or obligation, express or implied, arising out of, or
made or entered into in consideration of such act."
*Smilansky* v. *Mandel Bros., supra; Mathews Con-
veyer Co.* v. *Palmer-Bee Co., supra; Seamans* v.
*Temple Co.* (1895), 105 Mich 400.

Lake States' count against Lawrence for damages
for breach of contract and its alternative count in
*quantum meruit* are both "founded upon" Lake
States' unlawful act of doing business in Michigan
without having qualified to do so. Additionally, both
the express and implied-in-law liability and obliga-
tion sought to be enforced against Lawrence is
clamed by Lake States to arise out of such unlawful
act and whatever liability or obligation Lawrence
may owe Lake States was made or entered into in
consideration of Lake States' unlawful act of doing
business in Michigan. Thus, the clear and blunt

language of RJA § 2021 bars Lake States from maintaining this action.

RJA § 2021 explicitly covers implied liabilities or obligations as well as express liabilities or obligations. There is no room to construe it so as to make an exception for a liability or obligation the law implies, like the quasi-contractual recovery Lake States alternatively seeks.

Furthermore, to engraft an exception for implied liabilities or obligations would be to emasculate the legislative policy reflected in RJA § 2021. It would be a rare case where recovery of amounts approximating, sometimes greater than, those denied recovery under the express contract could not be obtained quasi-contractually if we allow unqualified foreign corporations to ignore the contract and to recover on restitutionary theories whenever they are forbidden from recovering on the express contract.

The prohibition against suit we now consider functions as a penalty. In that respect it differs from the statute of frauds which is designed to provide protection from imposition in certain kinds of transactions. We recognize that not infrequently in cases where a statute of frauds defense has been interposed courts have concluded that enforcement of the claim will not cause imposition and have allowed recovery by finding part performance taking the case out of the statute or invoking a restitutionary remedy; *Vanderhoef* v. *Parker Brothers Company, Limited* (1934), 267 Mich 672, 681. The principles developed in those cases have no application where the prohibition, as the one here, is meant to apply without regard to whether the defendant has a meritorious defense, indeed even if he does not. See *Cashin* v. *Pliter* (1912), 168 Mich 386, 391, 392.

The legislature has deliberately decided to declare a forfeiture in the belief that the *in terrorem* effect

of such a forfeiture will tend to compel compliance with the statutory provisions requiring foreign corporations to register and pay taxes comparable to those imposed on domestic corporations. That being the legislative decision our duty is to enforce it even though in a given case the amount of the forfeiture may appear quantitatively or relatively large. *Cf. Dawn Construction Co.* v. *Paris Home Builders, Inc.* (1960), 360 Mich 281, 285; *Bilt-More Homes, Inc.* v. *French* (1964), 373 Mich 693.

Nor does Lake States' compliance with Michigan's requirements after it committed all the acts upon which it declares in its complaint enable Lake States to maintain this action.[4] RJA § 2021 provides that an action may not be maintained based upon the commission of unlawful acts of the kind described in that section. Lake States' acts were of that kind. Lake States' subsequent qualification did not make those unlawful acts lawful.[5]

---

[4] Lake States asserts Lawrence "terminated" the contract on December 14, 1962, and that Lake States qualified to do business in Michigan on December 24, 1962. This action was commenced January 29, 1963.

[5] Section 95 of the general corporation act took substantially its present form with the enactment of PA 1907, No 310, § 6:

"No foreign corporation subject to the provisions of this act, shall be capable of making a valid contract in this state until it shall have fully complied with the requirements of this act, and at the time holds an unrevoked certificate to that effect from the Secretary of State."

The last clause in the section just quoted was added by the 1907 act, legislatively overruling (*Despres, Bridges & Noel* v. *Zierleyn* [1910], 163 Mich 399) earlier interpretations of PA 1903, No 34 (*Hastings Industrial Co.* v. *Moran* [1906], 143 Mich 679, 683) holding that the enforcement of such a contract is prohibited only until the corporation qualifies. Thus, under the statute as amended in 1907, subsequent compliance will not make valid a contract made in Michigan which, because of noncompliance, was invalid when made. Since qualification by a foreign corporation after contracting in Michigan will not relieve the Michigan contract of the invalidity which attached to it at the time of contracting, we think more harmonious a rule of law to the effect that qualification by a foreign corporation after commission of the unlawful acts sued upon (where the contract is a foreign-made contract) does not relieve those acts of their unlawfulness.

Lake States asserts that its contract with Lawrence was "executed" rather than "excutory" within the sense of *Carolin Manufacturing Corporation* v. *George S. May, Inc.* (1945), 312 Mich 487, and *Gill* v. *S. H. B. Corporation* (1948), 322 Mich 700. In those cases the party contracting with the foreign corporation failed in an attempt to declare the contract with the foreign corporation void after it had been fully performed by both parties. Lake States contends that Lawrence's termination of Lake States' employment under the contract after Lake States ceased work converted the contract from an executory to an executed one and thus, Lake States may recover under the cited cases.

We need not decide the somewhat metaphysical question whether the contract then became executed

Analogously, in *Irvine & Meier* v. *Wienner* (1920), 212 Mich 199, the Court declared that the inhibition against enforcement of contracts made during the period of default in filing annual reports was intended by the legislature to be perpetual. Similarly, see, *Industrial Coordinators, Inc.* v. *Artco, Inc.* (1962), 366 Mich 313, 316. While the statutory language (MCLA, § 450.87 [Stat Ann 1963 Rev § 21.87]) construed in the last-cited cases clearly required that result, the court in *Irvine & Meier* v. *Wienner*, observed (p 202):

"A glance at the former legislation on this subject discloses that the legislation has been steadily, for several years, growing more drastic. The obvious reason for this was to compel prompt filing of annual reports. With the legislature in this frame of mind when this legislation was passed, it is hardly conceivable that it intended only a temporary suspension of the right to enforce contracts, as that would be but mild punishment for its default."

There is no policy in this State of allowing late filers to recover for acts committed during the period of delinquency. *Cf. Bilt-More Homes, Inc.* v. *French, supra*, construing residential builders contractor's licensing law; *Irvine & Meier* v. *Wienner, supra; Despres, Bridges & Noel* v. *Zierleyn, supra*.

We have considered *Peter & Burghard Stone Co.* v. *Carper* (1930), 96 Ind App 554 (172 NE 319) (the dissenting opinion appears at page 600 of the official report but is not printed in the Northeastern reporter), and the decisions of other State courts cited by Lake States. We must adhere to Michigan's tradition of enforcing the various laws providing civil sanctions designed to achieve compliance with the corporate filing and payment of fees requirements, which laws were passed, no doubt, in recognition of the fact that the threat of fines and jail sentences had not proven and was not likely to prove effective.

as to performance required of Lake States thereunder. The cited cases only preclude the assertion of the contract's infirmity by the other contracting party after such other contracting party has himself performed, *i.e.,* when the contract is executed on both sides.

In this case Lake States is complaining that Lawrence has *not* executed the performance (payment of money) Lake States claims Lawrence contracted to render. Lawrence chose to avail itself of the unlawfulness of Lake States' actions before the performance required of Lawrence was rendered. Since Lawrence has not rendered the performance for which Lake States brought this action, the policy which precludes rescission by one who has fully performed, who fails prior to performance to assert the unlawful nature of the foreign corporation's act, does not here apply.

Lake States claims that when § 93a (making it a misdemeanor to violate § 93) was added in 1961 to the Michigan general corporation act,[6] RJA § 2021 ceased to apply to violators of § 93. The argument is that the criminal law penalties provided for in the 1961 enactment were intended to replace pre-existing remedies.

Apart from the fact that repeals by implication are not favored, we note that RJA § 2021, reenacting earlier legislation,[7] was passed subsequent to the law which added § 93a to the corporation act. We also note that it has not been Michigan's tradition to rely on criminal penalties in preference to civil

---

[6] CLS 1961, § 450.93 (Stat Ann 1961 Cum Supp § 21.94); PA 1961, No 122 (MCLA, § 450.93a [Stat Ann 1963 Rev § 21.94(1)]).
[7] See CL 1948, § 612.19 and earlier enactments going back to RS 1846, ch 116, § 2.
There has been no change in substance and little change in the verbiage of RJA § 2021 since it first appeared in the revised statutes of 1846.

remedies to obtain compliance with corporate filing requirements. We read the 1961 legislature's intention to be the addition of still another sanction, not as eliminating by indirection the harsh but exceedingly effective RJA § 2021. *Cf. Irvine & Meier* v. *Wienner* (1920), 212 Mich 199, 202; *Reuter Hub & Spoke Co.* v. *Hicks* (1914), 181 Mich 250, 253; *Dawn Construction Company* v. *Paris Home Builders, Inc., supra,* p 285.

Lake States cites *Rex Beach Pictures Co.* v. *Garson Productions* (1920), 209 Mich 692, where a nonqualified foreign corporation was permitted to replevy a motion picture film belonging to it. However, as pointed out by the Supreme Court in that case (p 707): "Plaintiff's [Rex Beach Pictures Co.] right to the possession of the property in question does not depend upon the void contract, but is rather in spite of, or notwithstanding such contract and the doing of business thereunder."[8] Here Lake States' right to recover depends on proof of the unlawful act of doing business in Michigan, not proof of ownership of property owned before it performed such unlawful act.

Under part III of this opinion we remand for trial on Lawrence's counterclaim against Lake States. So as to avoid misunderstanding, Lake States may defend against Lawrence's counterclaim by asserting as an offset whatever claims Lake States may have against Lawrence even though Lake States is statutorily precluded from maintaining an action on such

---

[8] Similarly, see *John J. Gamalski Hardware, Inc.* v. *Wayne County Sheriff* (1941), 298 Mich 662 (136 ALR 1155); *Benton Harbor Federation of Women's Clubs* v. *Nelson* (1942), 301 Mich 465; *Woman's Relief Corps No. 1 Michigan* v. *South Haven City and Township Library Board* (1945), 313 Mich 85, 92, and *In re Petitions of Auditor General* (1952), 333 Mich 700, 705, 706, where the Supreme Court allowed corporations delinquent in filing annual reports to maintain suits to vindicate their asserted interest in property held or claimed by another.

claims or seeking an affirmative recovery based thereon. Since Lawrence has put in issue the entire relationship of the parties, Lake States must be allowed to use defensively whatever claims it has against Lawrence.[9] *Cf. Milum* v. *Herz Brothers Water Well Drilling and Supply Company* (1958), 74 Nev 309 (329 P2d 1068).

## II.

The claim of the surety, USF & G, is that even though its principal, Lake States, is barred by the statute from recovering anything in our courts, it, USF & G, should be allowed as surety to recover from Lawrence the amounts it pays labor and material claimants.

USF & G relies principally on rules of law developed in public construction contract cases. Since mechanic's liens cannot be filed against public property,[10] contractors for public structures are required to furnish bonds for the protection of labor and material suppliers. See, *e.g.*, MCLA § 570.101 (Stat Ann 1953 Rev § 26.321); MCLA § 129.201 (Stat Ann Cum Supp § 5.2321[1]).

---

[9] While Lake States' pretrial statement asserted that there was an inconsistency between Lawrence's claim that the contract between Lawrence and Lake States is invalid under § 95 of the general corporation act because made in Michigan and its counterclaim for damages under that contract, this contention has not been pursued in its briefs filed with our Court.

Lawrence's counterclaim for breach of contract of necessity proceeds in affirmance of the contract. As previously mentioned we have decided this case on the assumption that the contract between Lake States and Lawrence was valid even though Lake States' actions in its performance violated § 93 of the general corporation act.

In all events it is clear that when Lawrence filed its counterclaim it did not mean thereby to waive its affirmative defense that Lake States may not enforce the contract. Lawrence's assertion of the counterclaim no more waived the affirmative defense than did its assertion of the affirmative defense preclude the counterclaim. See GCR 1963, 111.9(2).

[10] *Knapp* v. *Swaney* (1885), 56 Mich 345; 36 Am Jur, Mechanics' Liens, § 16, p 27.

In *Pearlman* v. *Reliance Insurance Co.* (1962), 371 US 132 (83 S Ct 232, 9 L Ed 2d 190), the surety prevailed against a bankrupt contractor's trustee in bankruptcy, a majority of the justices so holding on the ground that the surety was subrogated to the claims of laborers and materialmen against the funds retained by the government while the concurring justices put their concurrence on the ground that the surety stood in the shoes of the governmental authority itself.[11]

However, in *United States* v. *Munsey Trust Co.* (1947), 332 US 234 (67 S Ct 1599, 91 L Ed 2022) the United States was permitted, in preference to the claim of the contractor's surety who had paid unpaid laborers and materialmen, to set off against the funds which it had retained an amount due it from the defaulting contractor under another contract. In so holding the United States Supreme Court acknowledged that in earlier cases it had (p 240) "recognized the peculiarly equitable claim of those responsible for the physical completion of building contracts to be paid from available moneys ahead of others whose claims come from the advance of money. But in all those cases, the owner was a mere stakeholder and had no rights of its own to assert."

We have already held that Lake States may not recover from Lawrence and, thus, Lawrence has no obligation to Lake States which will be recognized

---

[11] The United States Supreme Court has ruled that the surety's rights in funds retained by the governmental authority are superior to those of assignees or general creditors of the contractor where the surety completes the contract (*Prairie State Bank* v. *United States* [1896], 164 US 227 [17 S Ct 142, 41 L Ed 412]) or pays those who complete it (*Henningsen* v. *U. S. Fidelity & Guaranty Co.* [1908], 208 US 404 [28 S Ct 389, 52 L Ed 547]). See, also, *National Surety Corporation* v. *United States* (Ct Cls, 1955), 133 F Supp 381, 383, 384.

Michigan cases applying these principles are *Fidelity & Casualty Co.* v. *Livingston* (1926), 234 Mich 375, and *City of Detroit* v. *Fidelity & Deposit Co. of Maryland* (1927), 240 Mich 213.

by our courts as supporting an affirmative recovery against Lawrence.

USF & G has cited no authority allowing a surety to recover for amounts the contractor could not recover.[12] In all the cases cited by USF & G, the one against whom recovery was sought was a stakeholder only and not a party to the controversy.

The Jeffersonian Apartments could have been liened by the labor and material suppliers USF & G has paid or may pay. As a general proposition, labor and material suppliers of a subcontractor have no claim against the general contractor or owner.[13] The principles developed in the public construction contract sector might, nevertheless, properly be invoked in a case where the private property owner or general contractor holds an unpaid amount owing to an uncollectible subcontractor and the question is whether labor and material claimants of the uncollectible subcontractor who have not protected their mechanic's lien rights, or a surety paying such claimants, should be preferred over general creditors or assignees of the subcontractor.[14]

It is apparent that the rules and principles of law urged upon us by USF & G developed as they did in cases where the real question was one of priority to moneys in the hands of the governmental authority or owner as between the surety and his contrac-

---

[12] See *Knapp* v. *Swaney* (1885), 56 Mich 345, 348, holding that a surety can claim nothing under a contract which the principal could not have claimed.

[13] A crossclaim was filed against one of the owners of the Jeffersonian Apartments but the portion of the record furnished us does not show whether the claim was filed by Lake States or USF & G or both, or its nature.

[14] It appears from *Prairie State Bank* v. *United States* (1896), 164 US 227 (17 S Ct 142, 41 L Ed 412), and other authorities (see, *e.g.*, *Sandusky Grain Co.* v. *Borden's Condensed Milk Co.* [1921], 214 Mich 306, 314 *et seq.*; 17 Am Jur 2d, Contractor's Bonds, §§ 39–42, pp 220–222) that the equitable principles involved are not necessarily to be confined to public construction contract cases.

tor-principal's receiver, assignee, or creditors who had no claim against the surety.

This case presents no issue of priority between USF & G and other competing creditors of Lake States. Different policies and principles of law are here controlling. USF & G has not claimed that Lake States is uncollectible, that it will not be able to enforce its right of indemnification against Lake States as principal for whatever amount it has paid or shall pay under the bond. Irrespective of whether USF & G and Lake States are in fact collaborating as Lawrence charges, if, as we must assume absent a claim to the contrary, Lake States, the principal on the bond, is collectible, the effect of allowing its surety, USF & G, to recover from Lawrence would be to benefit Lake States since Lake States would to that extent be relieved of the payment of labor and material claims.

Whatever equitable considerations might encourage us to recognize a remedy in favor of a surety whose principal is uncollectible against a fund still intact and owing, without regard to whether the principal may himself maintain an action to collect from the fund, do not apply where allowance of such a remedy would in fact subvert the policy of § 93 of the general corporation act and RJA § 2021 by reducing the sanction against a solvent foreign corporation.

## III.

Lawrence's counterclaim for damages for breach of contract is defended by Lake States on the ground that Lawrence's failure to obtain a residential builder's license prevents it from maintaining any action on the contract (PA 1965, No 383 [MCLA § 338.1501, *et seq.*, Stat Ann 1968 Cum Supp § 18.-86(101), *et seq.*]).

Our examination of this statute convinces us that the policy and language of its sanction are different from those imposed by the general corporation act and RJA § 2021.

Allowing anyone who deals with an unqualified foreign corporation to avail itself of the bar to suits by such corporation serves the public as a whole by providing a most effective deterrent to avoidance of State taxation and regulation of foreign corporations. The purpose of the residential builder's licensing law, on the other hand, is to serve a more limited portion of the public, namely, owners:

"In order to safeguard and protect home owners and persons undertaking to become home owners, it shall be unlawful * * * for any person to engage in the business of or to act in the capacity of a residential builder * * * without having a license therefor." MCLA § 338.1501 (Stat Ann 1968 Cum Supp § 18.86 [101]).

The policy of protecting the owner is reflected in the language adopted to express the scope of the disqualification on maintenance of suit which results from building without a license.[15] Section 16 of the statute provides:

"No person engaged in the business or acting in the capacity of a residential builder and/or residential maintenance and alteration contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this act without alleging and proving that he was duly licensed under this act at all times during the performance of such act or contract". MCLA § 338.1516 (Stat Ann 1968 Cum Supp § 18.86 [116]).

---

15 *Cf. Beznos* v. *Borisoff* (1954), 339 Mich 12.

Thus, a nonlicensed builder may not maintain an action to recover "compensation for the *performance* of any act or contract for which a license is required." (Emphasis supplied.) Accordingly, a nonlicensed builder may not recover for his own performance.

Lawrence's counterclaim does not seek recovery for Lawrence's performance. Lawrence rather seeks recovery against a subcontractor for the subcontractor's alleged nonperformance. Since Lawrence's counterclaim seeks recovery for nonperformance, not performance, the statutory limitation on suit by a nonlicensed builder does not bar the counterclaim.

It is true that Lawrence's unlicensed building operations were unlawful. MCLA § 338.1501 (Stat Ann 1968 Cum Supp § 18.86[101]). Absent an express statutory provision like § 16 as to the effect of such unlawfulness on its contracts made during the period of noncompliance, we might well declare them voidable at the option of the other contracting party on the common-law principle expressed in *Maurer* v. *Greening Nursery Co.* (1917), 199 Mich 522. But § 16 occupies the field. It states the extent to which one violating this statute is precluded from bringing suit. To invoke the principle expressed in the last cited case would be to give no significance to the legislature's choice of language and would be in effect to supersede § 16 altogether with the more comprehensive common-law sanction.

As the Michigan Supreme Court observed in *Cashin* v. *Pliter* (1912), 168 Mich 386, before a court declares applicable the common-law sanction invalidating contracts made in violation of law (pp 390, 391):

"the court should carefully scrutinize the particular statute under advisement, for the purpose of

ascertaining, from the subject-matter and language used, the object for which it was enacted and the intent of its makers, to the end that such intent may be rendered effectual and the indicated purpose accomplished."

Affirmed as to Lake States' and USF & G's appeal. Reversed and remanded for trial on Lawrence's counterclaim. Costs to Lawrence.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.