ALEXANDER MECHANICAL CON-
TRACTORS CO., INC., a Wisconsin cor-
poration, Plaintiff-Appellant,

v.

OWENS-CORNING FIBERGLAS COR-
PORATION, a Delaware corporation,
Defendant-Appellee.

No. 72–1328.

United States Court of Appeals,
Sixth Circuit.

Dec. 20, 1972.

Kenneth G. McIntyre, Lansing, Mich.,
for plaintiff-appellant; Maurice E. Scho-
enberger, Sinas, Dramis, Brake & Tur-
ner, Lansing, Mich., on briefs.

Robert Ionta, Kalamazoo, Mich., for
defendant-appellee; Eric V. Brown, Jr.,
Arvin Davis, Brown, Colman & DeMent,
Kalamazoo, Mich., on brief.

Before WEICK, PECK and MILLER,
Circuit Judges.

JOHN W. PECK, Circuit Judge.

This is an appeal from the District Court which found appellant prohibited from maintaining a breach of contract action in Michigan since it had failed to register to do business in Michigan pursuant to Michigan statutes.[1]

The essential facts are not disputed and are the subject of a stipulation between the parties. Briefly, appellant is a Wisconsin corporation in the business of mechanical contracting, and is engaged in plumbing, heating, ventilating, air conditioning, refrigeration and sheet metal work. On July 27, 1967, appellant was awarded a sub-contract by Phoenix Contractors Co., Inc., (hereinafter "Phoenix"), an Arizona corporation and general contractor, to do some of the mechanical contracting work on a proposed Ramada Inn at Lansing, Michigan. The sub-contract required the appellant to furnish all the specified labor and materials.

In order to carry out the contract with Phoenix, appellant came to Michigan and there entered into two contracts with a Michigan corporation to furnish the labor only for the heating and plumbing portions of the work; appellant was to furnish the materials. Apparently many of the materials were purchased from various Michigan suppliers.

Appellant also contracted with the appellee, a Delaware corporation with an office in Grand Rapids, Michigan, to provide all the materials and labor for the thermal insulation portion of the work. It is this contract which is the subject of this action, and the District Court found this contract to have been entered into in Wisconsin. That finding is not disputed.

The only work done by appellant's employees upon the Lansing Ramada Inn was to accomplish some "rough duct" work on the premises, which entailed appellant's construction of fibre glass ducts in Wisconsin, shipping them to Michigan and installing them at the motel. Appellant claims that this was undertaken since no equipment was available in Michigan with which to accomplish this type of work.

Appellant had not registered with the State of Michigan as a foreign corporation to qualify for doing business therein, but presumably appellee had done so. During the same period, appellant had entered into a similar contract with Phoenix for the construction of a Ramada Inn at Ann Arbor. The Ann Arbor Inn was built during the same period as the Lansing Inn.

After commencing performance at Lansing, appellee defaulted and it was necessary for appellant to enter into a new contract with Advance Universal Engineering Corporation[2] (hereinafter "Advance") to complete the work which appellee had agreed to do. Presumably Advance was qualified to do business in Michigan. It cost appellant $17,231.87 more than it had contracted to pay appellee to complete the work.

Appellant filed suit in the Circuit Court of Michigan against appellee for breach of contract. Appellee removed the case to the District Court on the

1. The following statutes are pertinent:
   Section 93 (MSA Section 21.94) Comp. Laws Mich.1948 § 450.93 [P.A.1956 No. 97]:
   "It shall be unlawful for any foreign corporation to carry on its business in this state, until it shall have procured from the Michigan corporation and securities commission a certificate of authority for that purpose. * * *"
   Section 2021 (MSA Section 27A.2021) Comp.Laws Mich.1948 § 600.2021 [P.A. 1961 No. 236]:

   "When, by the laws of this state, any act is forbidden to be done by any corporation * * * without express authority by law, and such act was done by a foreign corporation, the foreign corporation shall not maintain any action founded upon such act, or upon any liability or obligation, express or implied, arising out of, or made or entered into in consideration of such act."

2. Advance was the sub-contractor doing similar work for appellant at the Ann Arbor Inn.

ground of diversity of citizenship. Appellee then filed a motion to dismiss on the ground that appellant had not complied with the statutory requirements to register to do business in the State of Michigan. The District Court conducted a hearing on the issue of whether the statutory bar is applicable.[3] The court held that the statutes were applicable and rendered "a judgment of no cause of action in favor of [appellant]." This appeal follows.

We first address ourselves to the District Court's disposition of the case, which ostensibly entered judgment on the merits. However, the dismissal was based merely upon a failure to comply with a prerequisite to the court's determination of the merits of the substantive claims, i.e., the application of the statutory bar, and was not therefore an adjudication on the merits.

■ On appeal, appellant contends that the suit before us is based on a valid Wisconsin contract which did not contemplate that the unregistered foreign corporation would perform work in Michigan. It is argued that such acts as appellant was ultimately required to perform in Michigan were not done pursuant to this contract, were not contemplated therein, and hence are irrelevant.

Appellee claims in response that the evidence of appellant's contracts with Phoenix and other contractors which were not a part of the subject contract was relevant and tended to establish that appellant was carrying on its business in Michigan within the meaning of M.S.A. § 21.94. Appellee contends that the basic contract constituted an integral part of the business activity which it was at the time carrying on in Michigan and that all the contracts that appellant had in Michigan beginning with the contract with Phoenix should be considered by the court in reaching its conclusion. As a result, appellee argues, appellant was barred from maintaining

this action by the provisions of M.S.A. § 27A.2021.

The District Court found that appellant was engaged in "carry[ing] on its business" within the State of Michigan as contemplated by M.S.A. § 21.94. The court considered appellant's other contracts in Michigan in reaching that conclusion and found them to constitute the forbidden act under M.S.A. § 27A.2021.

It is agreed this action would not have arisen had it not been for appellee's default on the subject contract. Executed in Wisconsin, the contract required appellee to undertake certain obligations in Michigan. Under the terms of the contract, appellant's only obligation was to provide payment upon satisfactory completion of the contract. That appellant had not become domesticated under the terms of the Michigan statute is not controverted. Whether appellant was "carry[ing] on its business" in Michigan within the meaning of the Michigan statutes is, however, in controversy.

We conclude that the fact that appellant did not provide services or supplies in Michigan to appellee in the context of the instant contract distinguishes the case from Lake States Engineering Corporation v. Lawrence Seaway Corporation, 15 Mich.App. 637, 167 N.W.2d 320 (1969), which the District Court found determinative of the action. In that case, Lake States, an Illinois corporation, sub-contracted with general contractor Lawrence Seaway to construct the foundation for an apartment building in Detroit, Michigan. After completing part of the work and being partially paid, Lake States suspended work due to a dispute and sued for the balance of its work done. Lawrence Seaway had the remaining work completed by another subcontractor and counterclaimed for the cost of completing the work, less the balance of the contract price with Lake States. The Michigan Court of Appeals dismissed Lake States'

3. Efforts to resolve the issue by motion to dismiss or for summary judgment had twice previously failed. The District Court determined that the case required a full inquiry on the facts. Hence, the hearing was held.

claim on the ground that Lake States' actions in Michigan, pursuant to contract, were nevertheless unlawful because Lake States did not qualify to do business in Michigan before doing the work. Lake States first contended that the contract was made in Illinois, and therefore its claim was lawful. The Michigan Court of Appeals decided that on the basis of the record it could not determine that question but stated that, even if it were an Illinois contract, Lake States could not recover. The court then cited cases holding that a foreign corporation could not recover for services rendered in Michigan pursuant to a contract made outside of Michigan. 167 N.W.2d at 325.

We conclude that *Lake States* is not here controlling. First, Lake States conceded it was doing business in Michigan, 167 N.W.2d at 325, but that is precisely the question of this case. Second, the Lake States' claim rested on the unregistered corporation's performance in Michigan; in the instant case the unregistered appellant corporation was not required to render performance in Michigan. The District Court noted this distinction but was led by the third part of the *Lake States* opinion to discount the distinction. There Lake States defended a counterclaim on the grounds that Lawrence failed to obtain a residential builder's license and hence was prevented from maintaining any action on the contract pursuant to M.S.A. § 18.-86(101) et seq., M.C.L.A. § 338.1501 et seq. The *Lake States* court observed that M.S.A. § 18.86(116) specifically prohibits unlicensed builders from maintaining actions to recover for performance.[4] Noting that the counterclaim sought recovery for non-performance, and not performance, the *Lake*

*States* court found that the presence of M.S.A. § 18.86(116) did not bar the counterclaim and by its presence obviates the operation of the common law sanction under which contracts made in violation of statute were held to be invalid. The conclusion of the District Court below, then, is that the absence of a comparable statute regarding M.S.A. §§ 21.94 and 27A.2021 invokes this common law sanction in this instance.

■ We disagree. In order to determine whether the common law sanction may be invoked, it must first be determined if the act violates the statute. The language of the statutes leaves the answer in doubt. As did the District Court, we consider the legislative policy behind the statute. The *Lake States* court noted the dissimilarity of the statutes by stating that "[o]ur examination of this statute convinces us that the *policy* and *language* of its sanction are *different* from those imposed by the general corporation act and RJA § 2021." 167 N.W.2d at 330 [emphasis supplied]. Then addressing itself to those policy considerations of the statutes here in issue, the *Lake States* court suggests that "[a]llowing anyone who deals with an unqualified foreign corporation to avail itself of the bar to suits by such corporation serves the public as a whole by providing a most effective deterrent to avoidance of State taxation and regulation of foreign corporations." 167 N.W.2d at 330–31.

Applying those policy considerations to the instant suit, we find there is neither allegation nor evidence that Advance, the replacement contractor, failed to pay the appropriate taxes. Consequently, it is difficult to conclude that Michigan taxes, as regards the performance of the instant contract, were avoid-

4. M.S.A. § 18.86(116) provides in part: "No person engaged in the business or acting in the capacity of a residential builder and/or residential maintenance and alteration contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this act without alleging and proving that he was duly licensed under this act at all times during the performance of such act or contract . . ." M.C.L.A. § 338.1516 (Stat.Ann.1968 Cum. Supp. § 18.86(116)).

ed. As to the regulation consideration, we fail to see how a valid foreign contract requiring a domesticated corporation to perform in Michigan violates or avoids the Michigan policy consideration. Were appellant's claim to be denied, it could be read as encouragement of domesticated corporations, under similar circumstances, to default on their foreign contracts. This would certainly be damaging to Michigan interests in that it would threaten to reduce business opportunitites for Michigan corporations in such circumstances. A situation where a contract was executed in one state [5] or a contract requiring the unregistered corporation's performance in that state [6] might require a different result.

Since we find that appellant's claim is consistent with the policy considerations and since the language of the statutes does not specifically preclude recovery under circumstances such as here presented, we cannot conclude the acts of appellant are violative of law. Accordingly, we do not support invocation of the common law sanction.

■ As has been emphasized earlier, it is clear that a suit based upon an unregistered corporation's performance in Michigan is prohibited.[7] That the present suit is based on non-performance in Michigan and is not prohibited is equally clear. For example, in Transit Bus Sales v. Kalamazoo Coaches, 145 F.2d 804 (6th Cir. 1944), a plaintiff Wisconsin corporation had not registered to do business in Michigan and sought damages based upon the defendant's breach of a contract providing for plaintiff's exclusive distributorship of defendant's buses in a Michigan area. The court found a valid Wisconsin contract and rejected defendant's claim that the suit on the contract was barred in Michigan. Apparently plaintiff had

serviced buses in Michigan, but was not required to do so under the subject contract. As the court said:

"The cross-appellant urges that the contract contemplated that the appellant would not only deliver buses to customers, some of whom might be in Michigan, but would also service them and teach local mechanics the intricacies of their electrical and air systems. It relies upon Haughton Elevator & Mach. Co. v. Detroit Candy Co., 156 Mich. 25, 120 N.W. 18, where it was held that a contract specifically requiring the plaintiff to install one elevator and repair another constituted doing business in the state. The contract in that case, however, expressly provided for the repair, while that here involved makes no mention of servicing, and the record discloses that no buses sold by the manufacturer to the distributor were serviced by the distributor in Michigan. Such servicing as was done by the distributor was in connection with sales of Ford buses, not here involved, and the inhibition of the statute in respect to the maintaining of an action is limited to such action as is 'founded upon such act, or upon any liability or obligation express or implied, arising out of, or made or entered into in consideration of such act.' *There is nothing in the present contract* which contemplates servicing of the manufacturer's buses in Michigan, the suit is not upon a contract for the sale of Ford buses, and *does not arise out of any act done or contemplated to be done, under the contract here involved.* The Michigan statute does not preclude a suit upon it in Michigan." (Emphasis supplied.) 145 F.2d at 808.

Appellee claims the *Transit Bus Sales* case held the transaction to have been in interstate commerce and hence is not ap-

---

5. See, e. g., A & W Artesian Well Co. v. Tornabene, 124 Vt. 413, 207 A.2d 140 (1965).

6. Lake States Engineering Corporation v. Lawrence Seaway Corporation, 15 Mich.

App. 637, 167 N.W.2d 320 (1969), and the cases cited therein at 325.

7. Id.

plicable to the instant situation. We agree that the court in the *Transit Bus Sales* case observed that ". . . the mere taking of orders within a state for goods to be shipped into it is interstate commerce and does not involve 'doing business' within the meaning of such statutes. . . ." 145 F.2d at 807. However, the court later points out that more than "the mere taking of orders" occurred in the case and in fact the distributorship had other contacts such as servicing other buses. After pointing out these other contacts, the court decided it need not consider them as only the contract sued upon was under review. Consequently, since that contract involved "the mere taking of orders" which the court labelled interstate commerce, the court ultimately held the transaction as constituting interstate commerce. We choose to apply the analysis and not the result to this case.

In Michigan Lubricator Co. v. Ontario Cartridge Co., Ltd., 275 F. 902 (6th Cir. 1921), an unregistered Canadian corporation brought a breach of contract action against a Michigan corporation. The contract called for the Canadian corporation to purchase items made by defendant in Michigan. Far more "other activities" by the Canadian corporation in Michigan were established; e.g., plaintiff's agents lived in Michigan, conducted a separate manufacturing business in Michigan, made an advance payment on the contract from plaintiff's Michigan bank account, attended consultations at defendant's plant during the manufacturing period, and assisted the defendant in solving production problems. Although the case ultimately turned on a finding of interstate commerce, the defendant raised the Canadian corporation's failure to register to do business in Michigan as a bar to the suit in Michigan's courts. According to the court:

> "The Michigan courts have accepted the statutes as invalidating and forbidding recovery under a contract which contemplated that the foreign corporation should perform its part

within Michigan (Haughton Co. v. Candy Co., 156 Mich. 25, 120 N.W. 18; Imperial Co. v. Jacobs, 163 Mich. 72, 127 N.W. 772) and we accept this construction." 275 F. at 903.

Thus it is apparent that the courts have gone no further than to bar unregistered corporations performing in Michigan.

We are cognizant of the fact that the District Court below found, as a matter of fact, that appellant was "doing business" in Michigan within the meaning of M.S.A. § 21.94. We believe, however, that that above discussion establishes that the finding was "clearly erroneous." F.R.Civ.P. 52. Consequently, we need not reach appellant's other contentions involving application of the Commerce Clause.

Reversed and remanded for further proceedings consistent with this opinion.